WENZEL & HENOCH CONSTRUCTION COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*October 13—December 9, 1930.*

596

For the appellants there was a brief by *Charles J. Weaver* of Milwaukee, attorney for the Wenzel & Henoch Construction Company, and Christ Steinmetz of Milwaukee, attorney for the Wisconsin Mutual Liability Company, and oral argument by *Mr. Weaver.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan* and

*F. C. Seibold,* assistant attorneys general, and oral argument by *Mr. Seibold.*

NELSON, J. The facts are not in dispute. Willie Haney Alexander, applicant before the Industrial Commission, is the widow of James Alexander, who came to his death on September 19, 1928, while in the employ of Wenzel & Henoch Construction Company and while working at the bottom of an open trench being dug by said company on the east side of Lake Drive in Fox Point, Wisconsin. The trench was about sixteen feet deep and about twenty-seven inches wide. It was being excavated by a trenching machine which had a boom about thirty feet long on which was an endless belt or chain carrying digging buckets. The end of the boom was six feet above the surface of the ground, the lower end being at the bottom of the trench. The nature of the soil through which this trench was being dug was hard clay. The soil was not sandy or wet or liable to cave in as the word "liable" is ordinarily used. The sides of the trench were shored up with two-by-six maple planks placed in pairs and spaced about two or two and one-half feet apart along the sides of the trench, each pair of planks being supported by four hardwood struts or braces placed between them. At the time of the accident a brace had been placed about one and one-half feet from the lower end of the boom. From the last brace just mentioned there was exposed on each side of the trench above the boom a triangular surface about fourteen feet in length along the surface of the ground from the last brace to the point where the top edge of the boom came out of the ground. These triangular surfaces of the ditch were supported by a pair of braces placed six or seven feet ahead of the long perpendicular brace. These braces were five feet in length and were supported by hardwood struts between them. Alexander's work was

to place the lower end of the new upright braces which were put in from time to time as the machine proceeded and to place the lower struts or braces between the upright planks. A new set of braces was about to be placed when the ground between the last set of upright braces and the short brace upon the triangular surface along the east side of the ditch caved in and fell upon the boom. The cave-in reached about seven feet along the trench and covered the lower end of the boom. A hard piece of ground rolled down along the boom and struck Alexander on the side of the head as he was backing up along the bottom of the trench, causing his death. The bracing that was used in this trench was that customarily and ordinarily used by the company and by other operators in the same community working in similar trenches and ground. The company had, before the day of the accident, completed more than two thousand feet of ditch through substantially the same kind of soil and had employed the same methods of shoring without any cave-in occurring.

On January 9, 1929, the commission entered its award directing the payment of the primary compensation to the applicant, but reserved the right to determine any liability for increased compensation because of any failure of the employer to comply with any law of the state or lawful order of the commission. Thereafter, on February 12, 1929, a hearing was held and the commission decided that increased compensation was payable to the applicant because of a violation of order No. 53. No question is raised herein as to the primary compensation.

The plaintiffs contend that the Industrial Commission was without authority to promulgate said order No. 53. That said order is, under the decisions of this court, an attempt at legislation and was beyond the power of the commission to promulgate. Order No. 53 is as follows:

"Order 53. *Excavations.* All excavations, when so lo-

cated that persons may accidentally fall into them, must be guarded, and at night must be equipped with a red light. All excavations which are located in sandy or wet soil, or any soil which is liable to cave in, must be securely shored up."

The part of said order which is claimed to be legislative and unreasonable is as follows: "All excavations which are located in sandy or wet soil, or any soil which is liable to cave in, must be securely shored up."

In order to justify the fifteen per cent. penalty it must appear that the injury was caused "by the failure of the employer to comply with any statute of the state or any lawful order of the Industrial Commission." Sec. 102.09 (5) (h), Stats. The plaintiffs contend that order No. 53, under the decisions of this court, was not a "lawful order."

It is the duty of every employer to "furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards." Sec. 101.06.

The term "safe" is defined by statute as follows: "The term safe . . . as applied to an employment or a place of employment . . . shall mean such freedom from danger to the life, health, safety or welfare of employees . . . as the nature of the employment, place of employment . . . will reasonably permit." Sec. 101.01 (11).

The Industrial Commission is authorized by statute as follows:

Sec. 101.10 (3). "To investigate, ascertain, *declare and prescribe what safety devices, safeguards* or other means or methods of protection are best adapted to render the employees of every employment and place of employment and frequenters of every place of employment safe, and to protect their welfare as required by law or lawful orders. . . .

" (4) To ascertain and fix such reasonable standards and to *prescribe, modify and enforce such reasonable orders for the adoption of safety devices, safeguards* and other means or methods of protection to be as nearly uniform as possible, as may be necessary to carry out all laws and lawful

orders relative to the protection of the life, health, safety and welfare of employees. . . ."

This court, in *Bentley Bros. v. Industrial Comm.* 194 Wis. 610, 614, 217 N. W. 316, construed these statutes conferring authority upon the Industrial Commission as follows:

"In other words, it is the duty of the Industrial Commission to ascertain what safety devices or safeguards will make various places of employment as free from danger as the employment or place of employment may reasonably permit, and to require the installation of such safeguards and safety devices. That is the duty enjoined upon the Industrial Commission, and it marks the extent of its authority."

Does order No. 53, when applied to ditch excavations, require the installation of such safeguards and safety devices as will make such places of employment as free from danger as the employment or place of employment may reasonably permit? The court has concluded that it does not and that this case is ruled by *Bentley Bros. v. Industrial Comm., supra.*

Order No. 53, requiring excavations to be "securely shored up," is as much of "an attempt at legislation, pure and simple," as was general order No. 3502 involved in the *Bentley Case,* which order was as follows: "Safe and appropriate scaffolds shall be provided for workmen in exposed or elevated places." As to said order No. 3502 this court held in *Bentley Bros. v. Industrial Comm., supra,* p. 613:

"The language of the Industrial Commission, however, is broader than the language of the statute. The statute requires every employer to furnish a safe place of employment (sec. 101.06), and defines the term 'safe,' as used in such connection, to mean 'such freedom from danger to the life, health, safety or welfare of employees . . . as the

nature of the employment or place of employment . . . will reasonably permit. Sec. 101.01 (11). It will thus be seen that while the statute requires the place of employment to be as free from danger as the nature of the employment will reasonably permit, the order of the Industrial Commission lays out of consideration the question of reasonableness and assumes to require all scaffolds to be safe. That this is an attempt at legislation, pure and simple, is apparent. That it is ineffective, and beyond the power of the Industrial Commission, is just as manifest."

That order No. 53 is subject to condemnation for the same reasons stated in the *Bentley Case* clearly appears when the plain ordinary meaning of the words "securely shored up" is given consideration. Webster's New International Dictionary defines "secure" as follows: "Not exposed to danger; safe, as, *secure* from foes." "So strong, stable, or firm as to insure safety; safe." The Century Dictionary and Cyclopedia defines "securely" as follows: "Without risk or danger; in security; safely." "Firmly, in such a manner as to prevent failure or accident; so that loss, escape, injury, or damage may not result; as, to fasten a thing securely." It appears that the words "safe" and "secure" are synonymous. If order No. 3502, which required the "scaffold to be safe," was beyond the power of the commission to promulgate, then it seems clear that order No. 53, which requires excavations to be securely shored up, is equally beyond the power of the commission to promulgate, because it is an attempt at legislation and assumes to require that all excavations "be securely shored up."

It also seems clear to the court that so much of order No. 53 as applies to excavations, requiring them to be securely shored up, is not a reasonable order. If order No. 53 is given its plain ordinary meaning as applied to ditch construction excavations, then it becomes equally apparent that every cave-in resulting in injury will inevitably justify the

imposition of a fifteen per cent. penalty, because a mere cave-in would *prima facie* at least make out a penalty case. The mere happening of the cave-in would probably justify the conclusion that the excavation was not "securely shored up." We do not think that the statute giving authority to the commission justifies the promulgation of the order in its present form. In other words, we think that sub. (3) and (4) of sec. 101.10 place upon the Industrial Commission the duty of ascertaining what devices or safeguards are reasonably necessary in a given situation. Order No. 53 is silent as to what safety devices or safeguards are reasonably required in the construction of sewer ditch excavations. It is also silent as to what device or safeguard is required in order to make the exposed triangular sections hereinbefore mentioned as free from danger as such place of employment may reasonably permit. Before a penalty should be imposed, an employer engaged in any work ought to be reasonably advised or informed as to what safety devices or safeguards are required in order that the question as to whether or not he is complying therewith may be at least reasonably clear. The fairness of this conclusion becomes apparent when we consider that the testimony in this case shows that the method of "shoring up" the ditch where deceased came to his death was the same safety method customarily and ordinarily used by the company and other similar operators engaged in similar work. It is undisputed that a representative of the Industrial Commission inspected the job prior to the accident while the company was working in the same kind of ground and using the same method of shoring and that no criticism of such method was suggested.

It further appears that the commission's own experts and investigators were not in accord as to whether the instant case was one in which the penalty should be inflicted. On

September 25, 1928, Dennis J. Doyle, deputy, reported to the commission among other things as follows:

"It might be possible to shore the unprotected side walls on an angle with the boom to prevent such slides, especially on jobs where the depth of the trench is over ten feet."

In reply to this letter Mr. Satterfield, assistant engineer, wrote Mr. Doyle among other things as follows:

"We doubt the advisability of submitting this case under the conclusion that order No. 53 was violated. We have had a number of accidental injuries occurring in this way, and so far it has not been considered practical to shore that section of the trench walls immediately over the extended boom of the digging machine. It is the writer's opinion that to attempt the shoring in the way suggested would add an additional hazard in that the workman, in placing such shoring, would be subjected to contact with the moving conveyor."

It is therefore apparent that order No. 53 gave no definite information as to what would be a compliance therewith.

While the workmen's compensation act should be liberally construed, to which proposition we give our whole-hearted accord, we feel that orders promulgated by the Industrial Commission which necessarily and properly result in the infliction of a penalty, if violated, ought to be reasonably clear so as to give notice to employers as to what is reasonably expected of them in complying with such orders.

For the reasons stated it is held that so much of general order No. 53 as requires all excavations merely to be "securely shored up" was beyond the power of the commission to promulgate.

The Industrial Commission ought to have no difficulty in promulgating a new order as a substitute for order No. 53 condemned herein, which will not be legislative in character, will be sufficiently plain in its requirements to be reasonable

and valid, and will give to employers notice as to what is required in order that they may comply therewith. Excavations in or through different kinds of soil undoubtedly require different kinds of shoring in order that a safe place of employment, as defined by secs. 101.06 and 101.01, sub. (11), may be furnished.

*By the Court.*—Judgment reversed, and cause remanded with directions to render judgment setting aside the fifteen per cent. penalty award herein.

OWEN, J. (*dissenting*). The opinion of the court holds the provisions of Industrial Commission order No. 53, in so far as it requires "all excavations which are located in sandy or wet soil, or any soil which is liable to cave in, must be securely shored up," to be unlawful and beyond the power of the commission. To this I cannot assent. It is said that this conclusion is compelled by *Bentley Bros. v. Industrial Comm.* 194 Wis. 610, 217 N. W. 316. I see no similarity between the two cases. The language of the order there under consideration was: "Safe and appropriate scaffolds shall be provided for workmen in exposed or elevated places." This order prescribed no "safety device, safeguard, or other means or methods of protection." It simply provided that all scaffolds should be safe. It did not say that scaffolds should be equipped with a railing, nor did it prescribe any other safeguard that should be adopted or employed for the purpose of making scaffolds a safe place upon which to work.

The situation here is altogether different. This order does specify a safeguard. It requires ditches to be shored up. It specifies something that is not specified in the statute. The statute merely prescribes that the trench shall be maintained as a reasonably safe place in which to work. The order of the Industrial Commission says that to make it such a reasonably safe place in which to work it shall be

securely shored up. I cannot see why this is not in response to the duty which the statute lays upon the commission "To ascertain and fix such reasonable standards and to prescribe, modify and enforce such reasonable orders for the adoption of safety devices, safeguards and other means or methods of protection . . . as may be necessary to carry out all laws and lawful orders relative to the protection of the life, health, safety and welfare of employees . . . or frequenters of places of employment." Sec. 101.10 (4), Stats. The opinion seems to assume that if the order had laid down specifications to which the shoring should conform, then it would have been a lawful order. This is laying upon the Industrial Commission an unnecessary if not an impossible burden. I apprehend that what constitutes secure shoring is well known to any person engaged as contractor in the business of digging ditches and that further definiteness is not required. It is as definite as the term "drunk and disorderly," or as the term "reckless driving," both of which are made punishable offenses under our statute.

As the opinion does not discuss the question of whether there was in fact a violation of the order, I express no opinion thereon. I dissent from the conclusion that the order is unlawful.