HEIDEN, Respondent, vs. CITY OF MILWAUKEE, Appellant.

*October 13—November 9, 1937.*

For the appellant there was a brief by *Walter J. Mattison,* city attorney, and *Omar T. McMahon* and *Mathias Schimenz,* assistant city attorneys, and oral argument by *Mr. McMahon* and *Mr. Schimenz.*

For the respondent there was a brief by *Hannan, Johnson & Goldschmidt,* attorneys, and *Herbert L. Wible* of counsel, all of Milwaukee, and oral argument by *Mr. Wible.*

NELSON, J.   The city of Milwaukee is the owner of the Maryland avenue school building and the grounds adjacent thereto.   During the summer of 1933, the school grounds were used with the consent of the city by children and adults alike for play and recreational purposes.   The activities conducted upon those grounds were a part of a general summer playground movement or system fostered by the city.   On August 24, 1933, a final or closing children's summer festival was held there.   The festival was held during the early evening of that day.   Approximately a thousand people attended the exercises.   The participants, during the course of the exercises, went in and out of the north entrance to the school building for the purpose of putting on and removing their costumes.   The plaintiff, in response to a typewritten invitation distributed by the children, went to the school grounds

at about 6 o'clock in the evening to witness the exercises. Shortly before 7 o'clock it became necessary for her to go to a toilet. The sun was setting at about that time (6:41 p. m.) and the twilight visibility was good. She proceeded to the north entrance to the school building, where she encountered a playground supervisor who was stationed there to guard the entrance. Upon making her needs known, the supervisor permitted her to enter the building. A rule of the department permitted adults to enter the building for the purpose of using the toilets. She had never been inside the building before. No toilets were located on the first floor of the building excepting two in the kindergarten, the use of which was restricted to the kindergartners. All of the girls and teachers, excepting those in the kindergarten, had to use the girls' lavatory which was located in the basement. It was customary during the summer to lock all schoolroom doors. However, on the evening in question one of the classrooms on the first floor was being used by the girls for a dressing room, and from that room artificial light radiated into the hall on the first floor. The building was not otherwise lighted at the time the plaintiff entered it, or while she was thereafter proceeding toward the girls' lavatory. When inside the building, and upon inquiry, the plaintiff was informed that the girls' toilet was in the basement. Accompanied by her informant, a schoolgirl of about thirteen years of age, who had attended that school from the second to the eighth grade, the plaintiff descended into the basement. They then proceeded in a southerly direction along a corridor straight ahead for about thirty feet. While the corridor was dark, there was sufficient light in the corridor from outside sources to render it unnecessary for them to feel their way. It was just dark enough to make it somewhat difficult to walk along that first corridor. They then turned to the east or to their left, a distance of about four feet, through an archway which led to a platform or landing at the foot of stairs which led to the

Prospect avenue entrance on the east, and also to the girls' toilet room along another corridor to the south. Outside light from a window to the east of the archway and above the stairs made the platform somewhat more lighted than the first corridor through which they had just passed. On the platform or landing they then turned to the south, and the plaintiff, in response to the directions of the schoolgirl, who was still at her side, to walk straight down the corridor, took but a single step forward before falling down four steps which were located about two feet south of the archway through which they had just come. The plaintiff failed to see the steps because of the semidarkness and in the absence of any artificial light at or near the steps. As a result of the fall, the plaintiff sustained a fracture of the condyle of the femur of her left leg, a dislocation of the knee joint, and a tearing of the muscles and ligaments about the knee with probable permanently disabling effects. There were apparently sufficient lights to light the basement corridor had they been turned on. Those who were in charge of the playgrounds were also custodians of the grounds and buildings, and were in charge of the lights on the evening of the festival. They had been fully instructed by the school janitor with respect to the operation of the lights in the school building. The steps upon which the plaintiff fell were four in number, approximately five and a half feet wide, the treads of which were approximately ten inches wide, and the risers of which were five to six inches high. The steps extended into the corridor from the platform approximately forty to forty-five inches. The level of the platform was about two feet above the level of the corridor floor leading to the girls' lavatory.

The principal contention of the defendant is that the safe-place statute does not apply to a situation like the one here, because, at the time the plaintiff was injured the city was promoting an exhibition in connection with the supervised school-grounds play, and while so acting was performing a

purely governmental function. Under the well-established law, the state, a county, or a city is not liable for the negligence of its officers, agents, or servants while acting in a governmental capacity or in the discharge of a governmental function. *Apfelbacher v. State,* 160 Wis. 565, 152 N. W. 144; *Gensch v. Milwaukee,* 179 Wis. 95, 190 N. W. 843; *Erickson v. West Salem,* 205 Wis. 107, 236 N. W. 579; *Virovatz v. Cudahy,* 211 Wis. 357, 247 N. W. 341; *Crowley v. Clark County,* 219 Wis. 76, 261 N. W. 221. It is conceded that in putting on the playground exhibition the city was acting in the discharge of a purely governmental function. It is well established that in conducting a public school the municipality, whether city or school district, is performing a public duty and acts in a governmental capacity. *Folk v. Milwaukee,* 108 Wis. 359, 84 N. W. 420; *Juul v. School District,* 168 Wis. 111, 169 N. W. 309; *Srnka v. Joint District No. 3,* 174 Wis. 38, 182 N. W. 325; *Sullivan v. School District,* 179 Wis. 502, 191 N. W. 1020.

This action, however, is not grounded upon the common law or upon any asserted negligence against the city, its officers, agents, or servants. It is grounded solely upon the safe-place statute.

Ch. 101, Stats. 1933, so far as here material, provides:

Sec. 101.06 ". . . *Every owner* of . . . a *public building* now or hereafter constructed shall *so construct,* repair or *maintain* such . . . *public building* . . . as to render the same safe."

Sec. 101.01 (11) "The term 'safe' or 'safety' as applied to . . . *a public building,* shall mean such freedom from danger to the life, health, safety or welfare of employees or *frequenters, or the public,* . . . as the nature of the employment, place of employment, or public building, will reasonably permit."

Sec. 101.01 (12) "The term *'public building'* as used in sections 101.01 to 101.29 shall mean and include any structure used in whole or in part as a place of resort, assemblage,

lodging, trade, traffic, occupancy, or *use by the public*, or by three or more tenants."

Sec. 101.01 (13) "The term 'owner' shall mean and include every person, firm, corporation, state, county, town, *city*, village, *school district*, sewer district, drainage district and other public or *quasi*-public corporations as well as any manager, representative, *officer*, or other person having ownership, control or custody of any place of employment or *public building*, or of the *construction, repair, or maintenance* of any place of employment *or public building.* . . ."

Sec. 101.01 (5) "The term 'frequenter' shall mean and include every person, other than an employee, who may go in or be in a place of employment or public building under circumstances which render him other than a trespasser."

The words of the statute are clear, plain, and unambiguous, and when construed according to their common and approved usage as required by law, sec. 370.01 (1), are clearly applicable to a school building, owned by a city, and to a frequenter who may go in or be in such a public building under circumstances which do not render him a trespasser. The history of the development of the safe-place statute as it existed in 1933 shows a conscious and deliberate intention on the part of the several legislatures to broaden its scope and to enlarge the sphere of its applicability. When first adopted in 1911, it concededly applied only to employers and frequenters and to places of employment. Ch. 485, Laws of 1911. In 1913, the law was amended so as to include "a public building" as follows:

"Every owner of . . . a public building now or hereafter constructed shall so construct, repair or maintain such . . . public building . . . as to render the same safe." Ch. 588, Laws of 1913.

In 1917, the law was further amended by defining the term "frequenter" to include "every person, other than an employee, who may go in or be in a place of employment *or public building* under circumstances which render him other

than a trespasser." Ch. 133, Laws of 1917. In 1931, the law was again amended, and the term "owner" was thereby more broadly defined by adding to the statute as it theretofore existed, the italicized portion of the following statute:

"The term 'owner' shall mean and include every person, firm, corporation, state, county, town, city, village, *school district, sewer district, drainage district, and other public or quasi-public corporations as well as any* manager, representative, officer or other person having ownership, control or custody of any place of employment or public building, or of the construction, repair or maintenance of any place of employment or public building. . . ." Ch. 161, Laws of 1931.

The purpose and intent of the legislature greatly to broaden the application of the safe-place statute is indeed clear.

But the defendant earnestly contends that since the original safe-place statute and its various amendments are laws passed in derogation of the common law, the statute should be strictly construed, *Folk v. Milwaukee, supra; Juul v. School District, supra; Srnka v. Joint District No. 3, supra; Sullivan v. School District, supra; Brown v. Loewenbach,* 217 Wis. 379, 258 N. W. 379; that the intention of the legislature to abrogate a well-established rule of common law must clearly appear in order to accomplish such a result; that such intent does not appear because the legislature did not specifically provide by apt language expressive of such intent that the safe-place statute should be applicable to a city when engaged in performing a governmental function. In *Sullivan v. School District, supra,* it was held in substance that a pupil was not a frequenter and could not recover from the school district in whose school building he was injured. It was there said (p. 506):

"The doctrine of nonliability of a municipality for the performance of governmental functions is so deeply rooted in our jurisprudence and has so generally been recognized

and accepted for so long a period of time that in effect it has virtually attained the force of a statute, and while such doctrine has been recognized for over a half a century no legislature has attempted to nullify it."

The pupil who sought to recover damages in that action sustained an injury as a result of the failure of the school district to equip certain saws in its manual training department with proper safety devices and safeguards. The conclusion reached by the court at the time it decided that case (1923) was that a pupil attending a school is not a frequenter. The argument of the defendant that the legislature, had it intended the safe-place statute to apply to a city in the performance of a governmental function, would have expressly so provided, is not now persuasive. The several legislatures of Wisconsin, since the year 1911, have written into the safe-place statute, language which is clear and amply comprehensive to bring within the provisions of the safe-place law, cities and school districts, and the public buildings owned by them. Had the legislature intended that the safe-place statute should not apply to cities and school districts while performing governmental functions or to school buildings, it would have been a simple matter so to provide.

In *Srnka v. Joint District No. 3, supra,* decided in 1921, which involved an injury which occurred on November 25, 1919, it was held that the safe-place statute was not applicable to a school district or to a school building owned by it so as to render a school district liable to a pupil for injuries from a defect in the building. This conclusion was reached because the law did not specifically refer to school districts. But since that decision the law has been amended so as to include school districts.

We think it clear, therefore, that the legislature fully intended that the safe-place law should apply to cities and school districts. In *Schumacher v. Milwaukee,* 209 Wis. 43,

46, 243 N. W. 756, it was said with respect to a law which was in derogation of the common law :

"It is true that statutes in derogation of the common law are to be strictly construed, but that does not mean that the court is to struggle to defeat the purposes of the legislature."

In *Wilson v. Evangelical Lutheran Church,* 202 Wis. 111, 230 N. W. 708, it was held that a church building was within the meaning of the words "public buildings," and that the doctrine of nonliability of a church, because of its religious and charitable nature, had in part been abrogated by the safe-place statute. It was there said (p. 113) :

"If the complaint in this case states a cause of action it is because the defendant failed to maintain a public building so as to render the same safe. The principle upon which charitable corporations were held not to be liable for acts of their servants involved considerations of public policy. It is peculiarly within the province of the legislature to determine questions of public policy. The chapter referred to makes no exceptions of religious or charitable corporations and there appears to us to be no reason why it does not apply to a place of worship maintained by a religious corporation. More appropriate language to express that intention could scarcely be employed." See also *Jaeger v. Evangelical Luth. Holy Ghost Cong.* 219 Wis. 209, 262 N. W. 585.

It is our conclusion that the legislature intended that cities and school districts, as owners of public buildings, should be subject to the safe-place statute regardless of whether at a given time they are acting in a proprietary or governmental capacity, and that a city or school district may be liable to a frequenter who is injured in one of their public buildings, when such injury is proximately caused by a lack of safety, as defined by law, *i. e.,* unsafe construction or unsafe maintenance.

The defendant next contends that the evidence is not sufficient to show a violation of the safe-place statute by the city.

Whether the four steps in the corridor of the basement, upon which the plaintiff fell, considered apart from their location so close to the turn in the corridor, were structurally not safe, *i. e.*, not as safe as the nature of the school building would reasonably permit, is a close question. However, considering the location of the steps and their closeness to the turn in the corridor, along and around which frequenters to the building and others passed, we are of the opinion that a jury question was presented. The expert produced by the plaintiff was of the opinion that the steps were not as safe as the nature of the school building would reasonably permit. The expert produced by the defendant expressed a contrary opinion, *i. e.*, that the steps were as safe as the nature of the school building would reasonably permit. This dispute, in our opinion, gave rise to a jury question. *Bunce v. Grand & Sixth Building, Inc.*, 206 Wis. 100, 103, 238 N. W. 867, 868.

"When the experts disagree in a jury case the question can hardly be settled except by the jury."

Generally speaking, whether the safe-place statute is complied with or violated is a question for the jury. *Bunce v. Grand & Sixth Building, Inc., supra; Bent v. Jonet*, 213 Wis. 635, 252 N. W. 290; *Sweitzer v. Fox, ante*, p. 26, 275 N. W. 546.

Moreover, the corridor in which the steps were located was not artificially lighted at the time the plaintiff was injured. Failure to light a building, or part of a building, subject to the safe-place statute, is regarded as a failure to maintain the building in a safe condition and consequently a violation of the safe-place statute regarding maintenance. *Wilson v. Evangelical Lutheran Church, supra*, p. 114; *Kinney v. Luebkeman*, 214 Wis. 1, 252 N. W. 282.

The jury in this action found that the corridor was not safe, that the failure to light the corridor was a failure to

maintain the building in a safe condition, and that both facts as found were causes of the plaintiff's injuries. In our view, the findings of the jury in the respects mentioned cannot be disturbed.

The defendant next contends that the evidence adduced impels the conclusion that the negligence of the plaintiff immediately before and at the time she fell and sustained her injury was as great or greater than that of the defendant city. We are of the opinion that under the facts of this case the comparison of the plaintiff's contributory negligence, with that of the defendant, was for the jury, and that its finding that only ten per cent of the causal negligence was attributable to the plaintiff should not be disturbed. *McGuiggan v. Hiller Brothers,* 209 Wis. 402, 245 N. W. 97; *Brown v. Haertel,* 210 Wis. 345, 244 N. W. 630.

The defendant next contends that its motion for a new trial should have been granted, (1) because the court refused to give certain requested instructions to the jury; (2) because it erroneously instructed the jury; and (3) because it erroneously received in evidence several photographs of the basement corridor along which the plaintiff traveled just prior to her accident, which photographs were taken long after the night in question, and which incidentally revealed that the steps upon which the plaintiff fell had been removed and a slanting floor or ramp effect constructed in their place. We have carefully examined the instructions requested, as well as the instructions given, of which complaint is made, and are of the opinion that no prejudice resulted to the defendant therefrom. As to the photographs, we are also of the opinion that no prejudice resulted to the defendant. The photographs were received in evidence solely for the purpose of showing the general surroundings. Ordinarily, in personal-injury actions repairs or alterations made after an accident has occurred cannot be proven for the purpose of tending to

show that the place of the accident was defective or that the defendant was negligent. See C. J. p. 1232, § 791 (b); *Jennings v. Albion,* 90 Wis. 22, 62 N. W. 926; *Green v. Ashland Water Co.* 101 Wis. 258, 77 N. W. 722. However, in a very recent case evidence as to changes and alterations in a place of employment after the happening of an accident was considered as tending to support the finding of the jury that the place of employment was not as safe as its nature would reasonably permit. *Sweitzer v. Fox, supra.* The testimony of the plaintiff's expert was to the effect that an incline from the platform to the door of the girls' toilet, instead of the steps which existed at the time of the plaintiff's injury, would have been safer than the steps in the corridor. The jury apparently considered that opinion as credible and sound. The photographs added little, if anything, to that testimony. Moreover, the defendant was permitted fully to adduce testimony tending to show that the subsequent alterations of the corridor were part of a necessary plan to make certain space in the basement of the school building accessible and usable by the manual training department. Under all of the circumstances, we are of the opinion that the defendant was not prejudiced by the reception in evidence of the photographs in question.

Other contentions of the defendant have been carefully considered but in our opinion they do not merit separate discussion.

*By the Court.*—Judgment affirmed.