ROBERT A. JOHNSTON COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.

*January 14—February 9, 1943.*

300

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

*Charles H. Gorman* of Milwaukee, for the respondents.

FRITZ, J. On this appeal there is no dispute as to the facts. Gurrath, the employee, was injured upon slipping on a cement floor while cleaning, with the use of hot water, a machine and the floor, upon which a waxy substance had dripped from the machine in the operation thereof. The substance was rendered more slippery by the hot water used in doing the cleaning. There was no defect in the machine, the floor, or the drain toward which the floor was slightly pitched so that the mixture would drain off. The floor was not provided, however with any nonskid or protective surfacing; and, although the premises and machinery had been duly inspected by the Industrial Commission prior to the accident, it had not made any suggestions, complaints, or orders in relation to the floor or the providing of any antislipping devices. The order under review for the payment of fifteen per cent increased compensation was based by the commission on its finding that the injury was caused by the employer's failure to comply with the provisions in subd. (c) of order No. 14 of the commission's general orders on safety, which read:

"(c) The floor or ground surrounding machines shall be reasonably even, kept in good repair, free from obstruction over which persons may trip, and means provided to insure secure footing in so far as the nature of the work will permit."

The commission had not declared or prescribed by any order or otherwise what safety devices, safeguards, or other means or methods should be provided, or would be best adapted, to insure secure footing or render employees or the place of employment safe. The circuit court set aside the interlocutory

award on the grounds that subd. (c) of order No. 14 is unlawful because it is not a "reasonable order" in that the commission "is silent as to what device or safeguard is required in order to make . . . as free from danger as such place of employment may reasonably permit;" and that "the employer who is faced with a penalty . . . is entitled to know ahead of time what the commission is exacting of him by way of safeguard or device."

The commission and Gurrath contend that, in view of the provisions in sec. 101.13, Stats., such safety orders, prescribed by the commission under sec. 101.10, Stats., must be considered *prima facie* reasonable and lawful, and valid and in force until found otherwise in an action brought under sec. 101.26, Stats., against the commission to vacate the order on the ground that it is unlawful or unreasonable, or until the order is altered or revoked by the commission; and that therefore an employer cannot attack the validity of such a safety order in proceedings on an application for the payment of compensation. This conclusion cannot be sustained.

The provisions as to *prima facie* reasonableness and lawfulness, and the validity, force, and effect, prescribed by sec. 101.13, Stats., to be given to orders of the commission, are in relation to,—as provided in that section,—"orders of the industrial commission *in conformity with law*." It is only to such orders as are "in conformity with law" that there are applicable the provisions in sec. 101.13, Stats., that they are *prima facie* reasonable and lawful, and valid and in force "until they are found otherwise in an action brought for that purpose, pursuant to the provisions of section 101.27 of the statutes, or until altered or revoked by the commission." However when, as in the case at bar, increased compensation under sec. 102.57, Stats., is claimed on the ground that the injury was caused "by the failure of the employer to comply with . . . any *lawful* order of the commission" there must exist and be in force, as an essential basis for the recovery of such

penalty, an order which is "in conformity with law." And when it appears, in an action to vacate an award for such increased compensation, that the safety order relied upon as basis for the imposition thereof is not in conformity with law and is therefore unlawful, the award must be set aside. To provide and hold otherwise would be a denial of due process of law.

It is not claimed by defendants that there was any failure to comply with subd. (c) of order No. 14 in so far as it provided that "the floor or ground surrounding machines shall be reasonably even, kept in good repair, free from obstruction over which persons may trip. . . ." The only failure relied upon is noncompliance with the remaining portion of subd. (c), which requires "means provided to insure secure footing in so far as the nature of the work will permit." In using but these words, the order is silent as to what safety device or safeguard is to be provided in order "to insure secure footing in so far as the nature of the work will permit." Moreover the use of but the language last quoted, without qualifying the verb "will permit" by the adverb "reasonably," or some synonymous word, renders the order invalid in that the language used is broader in meaning than the language of the statute, which, in requiring every employer to furnish a safe place of employment, "defines the term 'safe,' as used in such connection, to mean 'such freedom from danger to the life, health, safety or welfare of employees . . . as the nature of the employment, or place of employment . . . will *reasonably* permit.' Sec. 101.01 (11)." By reason of the commission's failure to so qualify the verb "will permit," and its failure to indicate what means are to be provided to insure secure footing, the order is clearly invalid for the following reasons and conclusions stated by this court in holding invalid order No. 3502, which read, "safe and appropriate scaffolds shall be provided for workmen in exposed or elevated places," in *Bentley Bros., Inc., v. Industrial Comm.* 194 Wis. 610, 613, 217

N. W. 316; and order No. 53, which read, "all excavations which are located in sandy or wet soil, or any soil which is liable to cave in, must be securely shored up," in *Wenzel & Henoch Const. Co. v. Industrial Comm.* 202 Wis. 595, 600–602, 233 N. W. 777. As we said in the latter case,—

"As to said order No. 3502 this court held in *Bentley Bros. v. Industrial Comm., supra,* p. 613 : 'The language of the Industrial Commission, however, is broader than the language of the statute. The statute requires every employer to furnish a safe place of employment (sec. 101.06), and defines the term "safe," as used in such connection, to mean "such freedom from danger to the life, health, safety or welfare of employees . . . as the nature of the employment or place of employment . . . will reasonably permit." Sec. 101.01 (11). It will thus be seen that while the statute requires the place of employment to be as free from danger as the nature of the employment will reasonably permit, the order of the Industrial Commission lays out of consideration the question of reasonableness and assumes to require all scaffolds to be safe. That this is an attempt at legislation, pure and simple, is apparent. That it is ineffective, and beyond the power of the Industrial Commission, is just as manifest.'

"That order No. 53 is subject to condemnation for the same reasons stated in the *Bentley Case* clearly appears when the plain ordinary meaning of the words 'securely shored up' is given consideration. . . . It appears that the words 'safe' and 'secure' are synonymous. If order No. 3502, which required the 'scaffold to be safe,' was beyond the power of the commission to promulgate, then it seems clear that order No. 53, which requires excavations to be securely shored up, is equally beyond the power of the commission to promulgate, because it is an attempt at legislation and assumes to require that all excavations 'be securely shored up.' It also seems clear . . . that so much of order No. 53 as applies to excavations, requiring them to be securely shored up, is not a reasonable order. If order No. 53 is given its plain ordinary meaning as applied to ditch construction excavations, then it becomes equally apparent that every cave-in resulting in injury will inevitably justify the imposition of a fifteen per cent penalty, because a mere cave-in would *prima facie* at least make out a penalty case.

The mere happening of the cave-in would probably justify the conclusion that the excavation was not 'securely shored up.' We do not think that the statute giving authority to the commission justifies the promulgation of the order in its present form. In other words, we think that subs. (3) and (4) of sec. 101.10 place upon the Industrial Commission the duty of ascertaining what devices or safeguards are reasonably necessary in a given situation. Order No. 53 is silent as to what safety devices or safeguards are reasonably required in the construction of sewer ditch excavations. . . . Before a penalty should be imposed, an employer engaged in any work ought to be reasonably advised or informed as to what safety devices or safeguards are required in order that the question as to whether or not he is complying therewith may be at least reasonably clear."

*By the Court.*—Judgment affirmed.