HARNISCHFEGER CORPORATION, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*December 5, 1952—January 6, 1953.*

From a judgment entered May 27, 1952, the plaintiff appeals.

For the appellant there was a brief and oral argument by *L. A. Tarrell* of Milwaukee.

For the respondent there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

FAIRCHILD, J.   There is no dispute about the injury sustained by Axel Anderson. He was setting sheave plates in an open-frame hammer which was being operated by an assistant. Anderson was in charge and he would signal to the operator, or assistant, when the operator was to operate the mechanism for the descent of the hammer. At the time of the accident the operator released the hammer without any signal from Anderson, and as a result Anderson was injured while he had his hands between the dies. The primary compensation of an award of the commission is not questioned. Only the 15 per cent penalty awarded is questioned in this appeal.

The challenge is as to the correctness of the ruling that an "open-frame hammer" machine is included in the terms of Order 26 (a), quoted in the statement of facts. Appellant urges that an open-frame hammer is not a type of machine included in the order now being considered, and he also urges that the operation of the machine did not "require the hands to be placed between the dies."

As to the term "drop hammer," it is conceded that "drop hammer," regarded as a general term, may be applied loosely to any hammer machine that has the hammer part of it so constructed that it drops. However, the problem of applying

this term to machines used to form widely different products requires an analysis of the individual purposes and characteristics of the machine, as well as the manner of its operation. This is so because there is a well-defined distinction in the trade or industry between what is referred to as a "drop hammer" and what is known as an "open-frame hammer." The purposes and construction of these two different machines suggest their names and descriptions and constitute the basis of a distinction between them. When in writing an administrative order or a statute, the framer of the order or statute uses words which have a technical and well-established meaning universally understood in commerce or trade, that meaning must be read into and understood to be descriptive of the particular object dealt with in that order or statute. Respondent's Exhibit No. 1 (a pamphlet published by the National Safety Council) draws a well-marked distinction between "drop hammer" and "forging hammer" (open-frame hammer) on the basis of use and construction as follows:

"Forging hammers are so constructed that the anvil assembly is separate from the operating mechanism and machine supports; it rests on its own independent foundation. In such hammers flat dies are generally used, . . .

"Drop hammers are so constructed that the frames and upper parts of the machines are held and maintained in alignment with the anvil in such a manner, as to insure matching of the die impressions. The entire assembly of the hammer is supported by the anvil which, in turn, rests on a single foundation. Flat dies are rarely used on drop hammers; . . .".

Both hammers may be run by steam; the essential difference is in their structure and use. One Van Dam, superintendent of the Harnischfeger corporation forge shop for seven years, identified the above pamphlet and testified that the hammer being used by the injured man was a "forging hammer," or "open-frame hammer," which is definitely distinguished in the trade from the "drop hammer." This testi-

mony is substantiated by the testimony of the injured employee, who testified as follows:

"Q. What kind of hammer was it that you were working on? A. Open-frame steam hammer.
"Q. It was not a drop hammer? A. No.
"Q. There is a distinction, in your mind, between a drop hammer and an open-frame hammer? A. Sure. Open is different."

Van Dam, the superintendent, testified that the open-frame hammer generally is used for hammering out pieces of metal eight to ten feet long, and that the leadman, or the man placing the metal under the hammer, would normally be eight to ten feet away from the machine, so that the safety device required in Order 26 (a) for drop hammers would be impracticable on an open-frame hammer, because the man guiding the metal under the hammer would be too far removed to operate the safety device. In the case at bar, the leadman, although at the time working close to the machine, was not required to put his hands between the dies. The normal requirement was to use tongs to hold or remove the metal. Concerning the tongs, Anderson testified, "I wasn't required either one way or another." But his statement that their use would "slow down the work" is significant in explaining why he used his hands. The evidence further shows that the plate which Anderson was holding was seven inches wide, whereas the die was only five and one-half inches wide, thus allowing a margin of one and one-half inches which did not come under the die.

One Heindricks, safety director of the corporation, testified that the Industrial Commission, to his knowledge, had made no direct orders as to any safety equipment as far as that type of machine was concerned.

Sigurdson, a deputy of the safety and sanitation division of the Industrial Commission, gave the only testimony which is relied upon by the commission as sustaining its award. It

was his opinion that Order 26 (a) applied to open-frame hammers as being included under the words "every drop hammer." He did not testify that in the trade the drop hammer and open-frame hammer were synonymous. His testimony as to the various types of hammers to be included under the order refers to "drop," "drop bore," and "steam" hammers. The differentiation in this case is not between drop hammers and steam hammers. The distinction to be made here is between drop hammers and open-frame hammers. Both may be motivated by steam, but it is their construction and use which differentiates them in the trade.

Sigurdson further admitted that he had never seen the safety device provided in Order 26 (a) being used on a hammer identical with the open-frame hammer upon which Anderson was working at the time his hand was injured. In the case of *Wenzel & Henoch Const. Co. v. Industrial Comm.* 202 Wis. 595, 602, 233 N. W. 777, this court held that "Before a penalty should be imposed, an employer engaged in any work ought to be reasonably advised or informed as to what safety devices or safeguards are required in order that the question as to whether or not he is complying therewith may be at least reasonably clear."

There is no evidence in the record that the trade understood drop hammers to include open-frame hammers, but the evidence is all to the contrary. It is therefore considered that Order 26 (a) of the general orders on safety is not specific and that the judgment should be reversed.

*By the Court.*—Judgment reversed and cause remanded with directions to set aside the award.