MAHNKE, by Guardian *ad litem,* and another, Respondents, vs. AHLES, Appellant.*

*December 7, 1954—January 11, 1955.*

---

\* Motion for rehearing denied, with $25 costs, on March 8, 1955.

For the appellant there was a brief by *Genrich & Terwilliger*, attorneys, and *Emil A. Wakeen, Walter H. Piehler,* and *Neil M. Conway* of counsel, all of Wausau, and oral argument by *Herbert Terwilliger*.

For the respondents there was a brief by *Kivett & Kasdorf* of Milwaukee, and *O'Melia & Kaye* of Rhinelander, attorneys, and *A. W. Kivett* and *Alan M. Clack,* both of Milwaukee of counsel, and oral argument by *Mr. Clack* and *Mr. A. W. Kivett*.

FAIRCHILD, C. J.    Allan Mahnke was not a trespasser by reason of his being in the workshop near the machine at the time of his injury, because he entered and was present pursuant to the actual or implied permission of the appellant's employee in charge of the premises. The respondent contends that Julia Ahles is liable under the safe-place statute, sec. 101.06, for failing to provide a place of employment which was as free from danger to frequenters as the nature thereof reasonably permitted, thus violating the safe-place statute.

The machine on which respondent was injured is an ice-cutting machine. When a cake of ice is placed in the machine, the carriage on which it is placed is pushed back and forth by the operator. There are four vertical circular saws on a shaft, and one horizontal circular saw. The operator, facing the machine, moves the carriage containing the ice over the four verticle saws once, turns it a quarter way around, and repeats the sawing process. Then he pulls it back and moves it over the horizontal blade, and there results the ice cubes which the machine is designed to form. Immediately underneath the shafts and table on which the carriage rolls are two

chutes. One carries the cubes to a tub on the floor; the other takes the waste down to the floor at the side of the tub. A tin guard is erected between the tub and the lower part of the waste chute to keep separate the excess snow or ice from the cubes.

The court, in submitting the case to the jury, called attention to a rule of the industrial commission which had been admitted into evidence over objection. This rule, Order 73 (e) of the General Orders on Safety issued by the industrial commission reads: "Every circular saw shall be inclosed under the saw frame or table." However, in construing the meaning of the commission in that subsection, it is necessary to consider the language of the other parts of the rule.

Order 73 is entitled "Circular Saws." Then follows:

"(a) Every self-feed ripsaw shall be guarded and shall be equipped with a spreader fastened securely at the rear of the saw in alignment with the saw blade, except where a roller wheel is provided back of the saw. The spreader shall be slightly thinner than the saw kerf and slightly thicker than the saw disc. Every self-feed ripsaw shall also be equipped with an antikickback device installed on the in-feed side. Such antikickback device shall be designed to be effective for all thicknesses of material.

"(b) Every hand-feed circular ripsaw shall be equipped with a hood-type guard which will completely inclose the portion of the saw above the table and the portion of the saw above the material being cut. The hood and mounting shall be so arranged that the hood will automaticallly adjust itself to the thickness of and remain in contact with the material being cut.

"(c) Every hand-feed circular ripsaw shall be equipped with a spreader fastened securely at the rear of the saw in alignment with the saw blade. It shall be slightly thinner than the saw kerf and slightly thicker than the saw disc. The provision of a spreader in connection with grooving, dadoing, or rabbeting is not required. On completion of such operations the spreader shall be immediately replaced.

"Every hand-feed circular ripsaw shall be equipped with one or more nonkickback fingers or dogs mounted on the hood and so located and constructed as to oppose the thrust or tendency of the saw to pick up the material or to throw it back toward the operator.

"(d) Every circular cut-off saw shall be equipped with a hood-type guard which will completely inclose the portion of the saw above the table and the portion of the saw above the the material being cut. The hood and mounting shall be so arranged that the hood will automatically adjust itself to the thickness of and remain in contact with the material being cut.

"(e) *Every circular saw shall be inclosed under the saw frame or table.*

"(f) Gang trimmers, gang slashers, and equalizers shall be guarded by front and rear fences." .

A brief analysis of the principles behind the order and of the terminology and plan used in drawing it up makes it manifest that the requirements for protection provided for are meant to apply to woodworking machines. A ripsaw is a saw with coarse teeth set especially for the cutting of wood in the direction of the fiber. Such terms as "dadoing," "grooving," and "rabbeting," found in sub. (c) are well-known woodworking terms, as are "gang trimmers," "gang slashers," and "equalizers," in sub. (f). Furthermore, nonkickback dogs and fingers, spreaders, hoods are all safety devices which protect the operator from the portion of the saw above the table. In the first four subsections, different types of woodworking saws, such as, self-fed, hand-fed, hand-fed circular saws, circular cut-off saws, had to be dealt with separately, because the nature of their use above the table made slightly different requirements necessary for each. However, the only requirement for circular saws below the table was that they should be inclosed. In sub. (e), then, it was possible to include all of the circular saws mentioned in the foregoing subsections. The term "every circular saw," which

appears in sub. (e) refers to and means all those types of saws designated in the first four subsections.

The purpose and character of the particular machine involved in the instant case, as well as the manner of its operation, was not in the minds of the commissioners in formulating the rule referred to. The cutting machine in this case is a device made up so as to use circular saws but its construction differs completely from that of a sawing machine used in woodworking enterprises, where the result of the operation delivers the material operated on from the top of a table. Where the product made by the machine is delivered from the saws into chutes below the table, the practical purposes of the machine would obviously be defeated if an inclosure were put around and underneath the saw frame or table. In analyzing rules and statutes relating to safety to employees and frequenters, attention has been called to the necessity of noting distinctions in machines used to form "widely different products." *Harnischfeger Corp. v. Industrial Comm.* 263 Wis. 76, 56 N. W. (2d) 499.

In order to reach the saws, as was done by respondent, it was necessary for him, from the position in which he was, to reach into the chute to touch the blades. The testimony is that at the time he reached the saw he had bent over the tub and over the tin guard between the chutes and extended his arm up into the waste chute. He testified that he figured he could put his hand up there and not get far enough to be caught but misjudged the distance.

"*Q.* You couldn't see up the chute at just exactly what point the saws started cutting. *A.* No."

Further testimony was to the effect that "I had gotten some snow and was going to pull my hand away and something was starting to cut. It seemed like it was pulling it in. I knew then that saws cut. I deliberately put my hand up that chute; I didn't fall into it or anything like that."

: The evidence does not warrant the finding of the jury that the appellant failed to provide a safe place of employment which was as free from danger to the frequenter as the employment reasonably permitted. No want of construction or maintenance existed making the premises unsafe for employee or frequenter. The voluntary act of respondent in placing his hand near the saws does not make the owner of the place of employment liable for resulting injury. The safe-place statute was complied with, and Order 73 does not apply to the instant case. The judgment must therefore be reversed.

*By the Court.*—Judgment reversed, cause remanded with directions to dismiss the complaint.