MANITOWOC COMPANY, INC., Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*June 4—June 22, 1956.*

For the appellant there was a brief by *Clark, Rankin & Nash,* and oral argument by *John M. Spindler,* all of Manitowoc.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Walter Barnes there was a brief and oral argument by *Walter A. Graunke* of Wausau.

FAIRCHILD, C. J. In its findings of fact, the commission found that the appellant here failed in two respects: (1) To comply with Safety Order No. 34 (a); (2) to comply with sec. 101.06, Stats. (safe-place statute). The trial court stated in its memorandum decision the following:

"At the trial and in its trial brief plaintiff challenged the validity of Safety Order No. 34 (a). Most of the evidence produced at the hearing and in the record centers around the violation of this order. The attorney general, who represented the commission at this trial, laid little stress on that issue. He claimed that the apparatus or contrivance that fell and struck Walter Barnes on the head was not a true counterweight, and, therefore, the order was not applicable. The court is of the same opinion, and will not discuss the validity of the order."

Whether or not the apparatus was a true counterweight, we are of the opinion that Safety Order No. 34 (a) is invalid because it is both unreasonable and vague.

Workmen's Compensation Laws are based on plans to benefit both employee and employer. Certain requirements have been visited upon employers which they may reason-

ably be expected to meet, but this adjustment has not resulted in making an employer an insurer. Sec. 101.06, Stats. (safe-place statute), reads:

"Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein . . . and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes *reasonably adequate* to render such employment and places of employment safe, and shall do every other thing *reasonably* necessary to protect the life, health, safety, and welfare of such employees. . . ." (Emphasis supplied.)

The term "safe" or "safety" as used in the above statute is defined in sec. 101.01 (11), Stats., as follows:

"The term 'safe' or 'safety' as applied to an employment or a place of employment or a public building, shall mean such freedom from danger to the life, health, safety, or welfare of employees or frequenters, or the public, or tenants, or firemen, and such reasonable means of notification, egress, and escape in case of fire, and such freedom from danger to adjacent buildings or other property, as the nature of the employment, place of employment, or public building, will *reasonably* permit." (Emphasis supplied.)

An order requiring an employer to attach every counterweight "with a safety chain that *will prevent* the weight from falling" is impossible of fulfilment, unreasonable, and makes the employer an insurer. It is broader than the general statute upon which it is promulgated and requires the employer to furnish more than a reasonable degree of safety. *Bentley Bros., Inc., v. Industrial Comm.* 194 Wis. 610, 217 N. W. 316. Furthermore, the order is indefinite in that it contains no directions other than the counterweight "shall be inclosed or attached with a safety chain that will prevent the weight from falling to a distance of less than seven feet from the floor or working level." As was said in *Harnisch-*

*feger Corp. v. Industrial Comm.* 263 Wis. 76, 81, 56 N. W.
(2d) 499, which quoted with approval the case of *Wenzel
& Henoch Const. Co. v. Industrial Comm.* 202 Wis. 595,
602, 233 N. W. 777: " 'Before a penalty should be imposed,
an employer engaged in any work ought to be reasonably
advised or informed as to what safety devices or safeguards
are required in order that the question as to whether or not
he is complying therewith may be at least reasonably clear.' "
In the instant case the employer furnished a safety cable which
passed through an eye on the counterweight, as called for
by Safety Order No. 34 (a). One end of the safety cable
was then passed through the eyebolt, and the two ends were
clamped together with cable clamps. Thus, if the safety
snap hook or swivel should break, the counterweight would
not fall by reason thereof, because it was independently
attached to the eyebolt by the safety cable.

A ruling in the instant case that Safety Order No. 34 (a)
is invalid is supported in *Robert A. Johnston.Co. v. Industrial
Comm.* 242 Wis. 299, 7 N. W. (2d) 854, and *Wisconsin
Bridge & Iron Co. v. Industrial Comm.* 268 Wis. 314, 67
N. W. (2d) 378, 69 N. W. (2d) 492.

The only question to be considered, then, is whether or
not the appellant violated the provisions of the safe-place
statute. There is no occasion to question the good faith of
the employer in his attempt to provide protection for the
employee operating the spot-welding machine. The question
is, Was the method used a compliance with the statute?
As shown by the statutes set out above, the employer is
required to furnish a place of employment *reasonably* pro-
tecting the employee, by adopting and using "methods and
processes reasonably adequate."

Just what caused the loosening of the eyebolt is not known.
The evidence is that the employer did adopt a method in

affixing the counterweight to the ceiling which was a reasonably safe method. A witness, George Weaver, appellant's maintenance foreman, who had had thirteen years of experience in this kind of work, testified that the eyebolt used was a $\frac{3}{4}$-inch bolt; the safety cable was $\frac{1}{4}$ inch and was a continuous cable: "One end was affixed to the balancer and the other end went through the eyebolt. The balancer has a swivel. The balancer was perfect after the accident." The tensile strength of the eyebolt was 23,000 pounds, of the cable approximately 12,000 pounds. The weight of the counterbalance was not over 72 pounds. It also appears that the type of installation involved here was not a new and untried method. There were some 30 such installations in appellant's works, and the maintenance foreman testified that he had seen it used in other employers' factories.

Three safety devices were used to keep the counterweight from falling. A spring steel lock washer was placed between the regular washer and the nut on the threaded end of the eyebolt above the steel ceiling. The nut was turned down tightly upon the regular washer and upon the lock or spring washer. It is common knowledge that in mechanical devices a lock washer is used for the express purpose of preventing action of a bolt and to prevent vibration acting on the bolt and loosening the nut screwed onto it. Albert Albright, the maintenance leader who directed the installation, testified that "that spring washer absolutely should hold it."

A second safety feature was the swivel between the counterweight and the catch hook which suspended it from the eyebolt. This swivel was for the express purpose of preventing the turning of the counterweight from turning anything above the swivel, such as the eyebolt.

The third safety feature was the safety cable sling which formed an additional connection between the counterweight and eyebolt.

There is testimony by the claimant that he could make a complete turn of the "spot-weld gun," the inference being that such action had an influence in loosening the nut which held the eyebolt. The facts, however, show that there was a power cable running from a transformer, which was attached to a stationary steel bar, to the spot-welding machine. This cable prevented the welding machine from making more than a one-half turn. The spot-weld gun was attached to the counterweight by a balancer cable. Therefore the counterweight could not make more than a one-half turn. The evidence on this point by one who helped in the installation was:

"Q. How far could you turn this spot-weld gun in either direction? A. You could go one-half turn or maybe a little better. . . .

"Q. Why couldn't it go completely around? . . .

"Q. Could you make a complete turn? A. No.

"Q. Why couldn't you? A. Your uniflex [power] cable kept it from going completely around."

The only findings of the commission supporting its contention that appellant employer violated the safe-place statute are (1) that the employer could have inserted a cotter pin through the eyebolt, or (2) that he could have fastened the safety cable in such a manner that the entire unit would not have fallen if the eyebolt became disengaged. This is tantamount to saying that the installation could have been made safer. Admittedly, there may be ways in which the installation could have been made safe beyond a reasonable degree of safety. However, in *Hipke v. Industrial Comm.* 261 Wis. 226, 233, 52 N. W. (2d) 401, the argument that something might be made more safe was held to be no argument at all. In that case this court said:

"The claimant suggests a number of additions and changes which might have been made in the premises to render them

more safe. The argument that that fact indicates that the employer violated the safe-place statute might be made in any case. We are unable to conceive any structure, safe as it might be considered to be, which could not be made more safe. To hold that the possibility that a safe structure or instrument might be made more safe requires the conclusion that there has been a violation would be to make the owner or employer an insurer. Certainly in the application of a penal statute such as we have here to deal with, we may not go that far. As said by the learned trial judge, 'The law of Wisconsin does not guarantee safety. All that is demanded is adherence to the "rule of reason." ' "

The legislature did not intend to impose a penalty upon an employer who acted reasonably in providing employee protection because an improvement is suggested after an accident. When experience has shown a likelihood of failure in the setup, a continuance of the identical device might be evidence of failure to exercise the reasonableness required in an effort to furnish a safe place. But where a reasonable and good-faith effort to comply with the statute has been made, an accident does not become the premise of an argument that the occasion for imposing a penalty exists.

*By the Court.*—Judgment reversed, cause remanded with instructions to set aside the award of increased compensation.

CURRIE, J. (*dissenting*). Sec. 102.57, Stats., provides in part as follows:

"Where injury is caused by the failure of the employer to comply *with any statute* or any lawful order of the commission, compensation and death benefits as provided in this chapter shall be increased 15 per cent." (Italics supplied.)

In imposing the 15 per cent penalty upon the employer, the commission based the same upon two grounds: (1) That the employer failed to comply with the provisions of sec. 101.06, Stats. (the safe-place statute); and (2) that the employer violated Safety Order No. 34 (a). In the action

for review in the circuit court, that court determined that there was credible evidence to sustain the commission's finding of a violation of the safe-place statute making it unnecessary to consider the application of Safety Order No. 34 (a), or the validity of it. I am in full accord with such determination reached in the circuit court and would affirm the judgment below.

In our decision in *Hipke v. Industrial Comm.* (1952), 261 Wis. 226, 231, 52 N. W. (2d) 401, we stated:

"We have held that in the trial of a civil action for recovery on account of violation of the safe-place statute the question whether there has been a violation is for the jury. *Heiden v. Milwaukee* (1937), 226 Wis. 92, 275 N. W. 922. The same rule is applicable when the issue is presented to the Industrial Commission—its action is the determination of an issue of fact, as it is also when the violation of its safety orders is charged."

The test of whether there has been a compliance with the safe-place statute was set forth in *Haefner v. Batz Seed Farms, Inc.* (1949), 255 Wis. 438, 441, 39 N. W. (2d) 386, as follows:

"Under the safe-place statute an employer must furnish a place of work which is as free from danger *as the nature of the employment will reasonably permit,* and not merely a 'reasonably' safe place, as at common law." (Emphasis supplied.)

In the instant case the commission found that the employer failed in two respects to properly guard against the heavy counterweight falling from the ceiling upon the employee. In the first place no cotter pin was inserted through the upper end of the eyebolt above the nut which would have prevented the nut from unscrewing thereby causing the eyebolt to drop through the ceiling. Secondly, the safety cable should not have been fastened to the eyebolt but should have been separately secured to the ceiling. An issue of fact was

presented as to whether the failure to employ these two safety measures would have rendered the place of employment as "free from danger as the nature of the employment will reasonably permit." Such issue of fact was determined adversely to the employer and this court should not disturb such finding.

If it had been a frequenter instead of an employee, who had been hit and injured by the falling counterweight, and he had sued the employer for damages alleging a cause of action based upon violation of the statute, and the jury had made the same finding in its special verdict that the commission did here, it is difficult for me to envisage this court setting aside the verdict and ordering dismissal of the action. The commission's finding in the instant case is entitled to the same weight as a jury's verdict.