RALPH E. OSBORNE, District Attorney, Monroe County
You ask whether a town, city or village which operates its own waste collection and disposal facility may be taxed for any portion of the cost of a county solid waste management system established under sec. 59.07 (135), Stats. It is my opinion that pursuant to sec. 59.07 (135)(1), Stats., nonparticipating municipalities may be taxed for all costs for the countywide system of a capital nature; however, they are specifically exempted from any tax levied to cover day-to-day operating expenses.
Section 59.07 (135), Stats., authorizes counties to operate and establish a solid waste management system and, in counties under 500,000 population, authorizes them to create a solid waste management board to operate the system. Section 59.07 (135) specifically provides that:
 ". . . For the purpose of operating the solid waste management system, the board may exercise the following powers:
 "(1) Appropriate funds and levy taxes to provide funds for acquisition or lease of sites, easements, necessary facilities and equipment and for all other costs required for the solid waste management system except that no town, city or village which operates its own waste collection and disposal facility, or property therein, shall be subject to any tax levied hereunder to cover the cost of operation of these functions. Such appropriations may be treated as a revolving capital fund to be reimbursed from proceeds of the system." (Emphasis supplied.) *Page 78 
The phrase "cost of operation" is not defined in ch. 59, Stats. As a general rule, where words used in a statute are not specifically defined, they should be accorded their ordinary and accepted meaning, which may be established by the definition contained in a recognized dictionary. Town of Lafayette v. Cityof Chippewa Falls, 70 Wis.2d 610, 235 N.W.2d 435 (1975). However, when words are used "which have a technical and well-established meaning universally understood in commerce or trade, that meaning must be read into and understood to be descriptive of the particular object dealt with." Harnischfeger Corp. v. IndustrialComm., 263 Wis. 76, 79, 56 N.W.2d 499 (1952).
"Cost of operation" is a well-established term of art in tax and business parlance. It is used to designate the day-to-day costs of running an enterprise, as distinguished from long-term expenditures chargeable to the capital account. According to Volume 9A Words and Phrases, p. 604, "`operating expenses' and `costs of operation' are interchangeable terms . . . ." Regarding "operating expenses" Bouvier's Law Dictionary, pp. 2416-2417 (Rev. 8th Ed.), declares "[t]hey are, broadly speaking, those which it is reasonably necessary to incur for the purpose of keeping up [an enterprise] as a going concern."
No actual definition of "cost of operation" appears in either the Wisconsin or federal taxation statutes. However, the distinctions made in sec. 71.04, Stats., between ordinary and necessary expenses and organizational expenditures are illustrative of the kind of line the Legislature probably intended to draw by using the term "cost of operation" in sec.59.07 (135)(1), Stats. A similar distinction may be seen on the federal level. See, for example, 26 U.S.C. sec. 382, Net Operating Loss and 26 U.S.C. sec. 383, Net Capital Loss.
My opinion that "cost of operation" encompasses only those costs incurred by the county in the day-to-day running of the system is supported by an examination of sec. 59.07 (135)(1), its legislative history and its legislative purpose. I provide the following analysis even though the established meaning of "cost of operation" provides an adequate basis for my conclusion and resort to other aids in statutory construction is unnecessary. *Page 79 
 Legislative History
The legislative history of sec. 59.07 (135)(1) in ch. 130, Laws of 1971, indicates that the Legislature specifically focused its attention on the question of how the various costs of a county waste management system were to be covered and whether both users and nonusers were to be taxed.
Assembly Bill 13 as originally introduced provided for the establishment of a waste management system simply by extending sec. 59.07 (52)(b), Stats., then applicable only to Milwaukee County, to all counties. This version would have given all counties the power among other things to:
 ". . . levy a tax to create a working capital fund to maintain and operate dumpage facilities, construct, equip and operate incinerators and other structures for disposal of wastes . . . levy taxes to provide funds to acquire sites and to construct and equip incinerators and other structures for disposal of wastes . . . ."
Assembly Substitute Amendment 1 to Assembly Bill 13 deleted "levy a tax to" and "levy taxes to" in the above phrases and specifically stipulated that nonusers were not to be taxed for costs either "to commence or maintain" a waste disposal system.
Senate Substitute Amendment 1 to Assembly Bill 13 rejected both Assembly proposals — including the one which would have made users alone liable for all costs of the system — and created present sec. 59.07 (135)(1) as a separate provision. The first draft of this Amendment contained the phrase "except that no town, city or village which operates its own . . . shall be subject to any tax levied hereunder to effect these functions" (emphasis added). This was changed in the final version to "tocover the cost of operation of these functions" — much narrower language.
I believe the above legislative history, while neither clear nor conclusive, tends to support the position that the Legislature by using the phrase "cost of operation" demonstrated its intent not to allow nonparticipants to escape all costs whatever for the countywide system, but only day-to-day operating expenses. *Page 80 
 Legislative Purpose
The view that "cost of operation" should be read broadly is not only contrary to the established meaning of the phrase and the legislative history of the statute, but it also reflects a fundamental misconception of the purpose of the Legislature in enacting sec. 59.07 (135). The Legislature, in my view, did not intend merely to allow counties to set up countywide waste disposal management systems. In enacting this section, the Legislature actually intended to encourage counties to do this.
If the purpose of the Legislature was to promote a countywide solution to this problem then a broad construction of "cost of operation" in a large measure thwarts it. County boards must be able to look to the towns, cities and villages as partial sources of revenue if they are ever to receive sufficient funds to develop a countywide solid waste management system. Construing "cost of operation" to encompass capital as well as operating costs would mean that it would be in municipalities' best interest to drag their feet, allowing those who do participate at the outset to bear the burden of the initial capital investment.
 "[T]he cardinal rule in interpreting statutes is that the purpose of the whole act is to be sought and is favored over a construction which will defeat the manifest object of the act." Student Asso., U of Wis.-Milw. v. Baum, 74 Wis.2d 283, 294, 295, 246 N.W.2d 622
(1976).
I must conclude then, that the most reasonable construction of the statute, one compatible with its language and purpose, is that municipalities with their own solid waste collection and disposal systems may be taxed for all costs for the system of a capital nature, but may not be taxed for day-to-day operating costs.
In closing, I note that pursuant to sec. 59.07 (52), Milwaukee County is similarly authorized to levy taxes on both users and nonusers for construction of a countywide waste disposal system. Our supreme court in West Allis v. Milwaukee County, 39 Wis.2d 356,368, 159 N.W.2d 36 (1967), found the scheme to be a rational approach to the fiscal realities of municipal government, even though "the practical effect is to make it financially impossible for a municipality to have its own separate refuse disposal facilities."
BCL:DJH *Page 81