BELLMANN, Respondent, v. NATIONAL CONTAINER CORPORATION OF MICHIGAN, Appellant.

*October 8—November 5, 1958.*

320

For the appellant there was a brief by *Raymond J. Moore,* and oral argument by *Raymond J. Moore* and by *Gary E. Moore,* both of Milwaukee.

For the respondent there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Reuben W. Peterson, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Peterson.*

BROADFOOT, J. The defendant contends that the trial court committed prejudicial error by submitting to the jury a question as to the violation of the safe-place statute, sec. 101.06. It contends that the area was not a place of employment within the meaning of the statute in so far as the defendant is concerned. The defendant advances several arguments to support this contention.

It contends, among other things, that Bellmann should have been found contributorily negligent as a matter of law because he was in charge of the installation and had full knowledge of the conditions in the area where he went to work. Contributory negligence was pleaded in the answer as an affirmative defense. The record indicates that the defendant made an oral request to include a question on contributory negligence in the special verdict. This request was denied by the court. In its motions after verdict the defendant did not include the failure of the court to submit a question on contributory negligence as a ground for any relief. No such claim was made in the oral argument and it is not included in the conclusion of the defendant's brief wherein the relief sought here is summarized. Contributory negligence is not in issue here and a claim thereof does not support the contention that the first question in the special verdict should not have been submitted.

The defendant also argues that Lonn Brothers was given complete custody and control over the premises for the purpose of making the heating and ventilating installations dur-

ing the construction; that no hazard existed when the area was turned over to Lonn Brothers and that the hazard, if any, was created by the employees of Lonn Brothers, including Bellmann. This is an attempt to bring the case under one rule announced in *Potter v. Kenosha,* 268 Wis. 361, 68 N. W. (2d) 4. The rule in that case was stated to be that, when an owner turns over to an independent contractor the complete control and custody of a safe place and then the contractor changes the premises and as a result a hazardous condition is created, the owner does not become liable under the safe-place statute to the contractor's employee injured as a consequence of such hazardous condition.

The situation here is entirely different. Lonn Brothers' contract was either with the owner or the general contractor and there is nothing in the record to indicate that as part of that contract Lonn Brothers should inclose the area or provide a safe runway, or that they did so.

It is also argued that the only purpose of the areaway was to hold the heating and ventilating equipment and various water pipes and there was no duty by the defendant to maintain the area as a place of employment since the risk was unknown to it. There was no reservation of anything in the lease. The defendant leased the entire premises. Its knowledge of the unsafe condition will be treated later in the opinion.

The defendant also attempts to shift the duty to provide a safe place of employment to the owner of the building under the terms of its lease. No attempt was made to interplead the building owner and the lease itself provides that the defendant shall save the owner harmless for any injury or loss of life occasioned by any present or future latent or other defect in the condition of said premises. The defendant had such right to possession, control, and dominion of the area as to make it directly liable under the decision in *Potter v. Kenosha, supra.*

The issue as to whether or not the defendant furnished a safe place of employment was the main issue in the case. It was raised by the pleadings. There was sufficient evidence to sustain an affirmative answer by the jury and there was no error on the part of the trial court in submitting the question.

It is next contended that the trial court committed prejudicial error by including in the special verdict a question with reference to notice to or knowledge by the defendant of the condition of the area. It contends that there was no notice, actual or constructive, to the defendant. We cannot agree.

The plant manager for the defendant testified at the trial. He testified that he had never gone into the area himself but that he had looked into the entrance during the daytime and that he needed a flashlight in order to see into the area; that he knew heating equipment was installed therein, and that it would be in order for Lonn Brothers to inspect the equipment in that area in case the heating plant was not working properly. This testimony was sufficient to sustain a finding by the jury that the defendant had actual knowledge of conditions within the area.

As to constructive notice, the testimony shows that the defendant had been the sole occupant of the building for more than a year and a half. It had called Lonn Brothers upon several occasions to repair or adjust its heating plant and it knew that a portion of such equipment was located within the area, and that it was in order for employees of Lonn Brothers to enter for the purpose of doing the work required. The defendant should have taken precautions to see that the place was as safe as the nature of employment and the place of employment would reasonably permit.

The defendant again refers to provisions in its lease. We do not believe those provisions are applicable. As we stated above, the defendant had such possession, control, and do-

minion over the premises that it was duty bound to furnish a safe place of employment even in this particular area.

The plaintiff called an engineer as a witness. He was qualified as an expert although his direct testimony was confined to certain measurements he had made in the area and observations he had made while he was taking the measurements. On cross-examination the witness was asked as an engineer with long years of practice if he would have constructed the type of access such as the planks which were found in the areaway. The court sustained plaintiff's objection to the question. The defendant also inquired of the engineer as to the custom in the community relative to illumination. The court sustained objections to such questions. Thereafter, in the absence of the jury, defendant's counsel informed the court that he intended to call an architect as an expert witness for the purpose of propounding questions in connection with the custom, usage, and practice followed in Milwaukee county in so far as furnishing lights and access by means of planking or a catwalk from the opening into the areaway in similar areas. The court stated it was of the opinion that this testimony would not be competent and if offered he would sustain an objection thereto. The defendant did not call the architect as a witness. The defendant now contends that the trial court committed reversible error in refusing to permit testimony as to the usage, custom, and practice in Milwaukee county in those regards. The defendant cites cases, most of which referred to public buildings and not to places of employment, or to actions based on common-law negligence, in which some testimony as to custom in the community had been permitted. We do not think the cases are pertinent. The areaway was obviously unsafe as a place of employment and the fact that other builders construct unsafe areas for the housing of equipment could not change the situation. The objections to the ques-

tions asked of the engineer were properly sustained and there was no actual offer of proof of what testimony would have been given by the architect had he been called.

Finally the defendant contends that the damages found by the jury are excessive, although it is not contended that the excessive awards were made because of the perversity of the jury. The jury did award damages in excess of the statutory limits for pecuniary loss and loss of society and companionship. The trial court reduced the amount of damages for those items to the statutory limits. The defendant contends that there should have been a further reduction, principally because there was evidence in the record that Bellmann had heart trouble. The record does show that Bellmann had suffered a heart attack and had been involved in an automobile accident. The record further discloses that he was fifty-four years of age at the time of his death; that his life expectancy was 18.09 years, and that he was earning $3 per hour; that he worked seven and eight hours a day five days a week. The life expectancy of the plaintiff was 14.10 years at the time of the trial. There was testimony as to their home life and the use made of Bellmann's earnings. Defendant contends that the life expectancy used was based on figures for a person in good health and not for one who had suffered a heart attack two and a half years prior to the date of his injury. We understand the life-expectancy tables are based upon averages and that there are no separate tables for determining the life expectancy of persons in good health and those in poor health. From the record we are convinced that the award of the statutory maximums was justified under the facts in this case. We can find no error in the trial.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., and BROWN, J., took no part.