LEE, Plaintiff and Respondent, v. JUNKANS and another, Defendants and Appellants.

*October 5—October 30, 1962.*

For the appellants there was a brief by *Cameron, Cameron & Shervey* of Rice Lake, and oral argument by *William A. Cameron.*

For the respondent there was a brief and oral argument by *Daniel I. D'Amico* of Cumberland.

GORDON, J.

### 1. *The Causal Negligence of Henry Junkans.*

Because of the defective scaffold, the jury found Henry Junkans negligent in failing to furnish a place of employment as free from danger to frequenters as the nature thereof reasonably permitted. The jury also found that such negligence was not a cause of the accident, but the trial court changed the answer.

Henry Junkans was an owner of the property involved and was helping in the construction of his own house. Mr. Cloeter was engaged to "rough in" the house. The other carpenters were employees of Mr. Cloeter, were paid by him, and were under his supervision. However, the record establishes that Henry Junkans did not turn over complete control of the premises to Mr. Cloeter. Henry Junkans personally worked on the job and also purchased some of the materials necessary for the job, although other materials were bought by Mr. Cloeter. In addition, Mr. Junkans

engaged such other tradesmen as the excavators, plumbers, and electricians.

The trial court instructed the jurors that it was their duty to determine if Mr. Junkans retained control of his premises. Their finding that Mr. Junkans was negligent reflects a conclusion that he did retain control of the premises, and we consider that there is credible evidence to support this position.

In *Potter v. Kenosha* (1955), 268 Wis. 361, 372, 68 N. W. (2d) 4, this court held that when an owner turns over to an independent contractor the complete control and custody of his premises and the contractor then creates a hazardous condition, the responsibility therefor does not rest with the owner. The record in the instant case leads to the conclusion that Henry Junkans retained sufficient control to share the onus for the unsafe scaffold.

The appellants also contend that there can be no liability on the part of Henry Junkans because of the absence of notice to him of the defect. Either actual or constructive notice of an unsafe nonstructural condition is essential in order to make a finding of liability on the part of an employer regarding a frequenter on the premises. *Uhrman v. Cutler-Hammer, Inc.* (1957), 2 Wis. (2d) 71, 75, 85 N. W. (2d) 772. Henry Junkans, as the owner of a place of employment, stood in the shoes of the employer by reason of his retention of control of the premises; he was therefore entitled to notice.

The trial court instructed the jury that in order to find that Henry Junkans did not maintain the scaffold as safe as the nature of the place reasonably permitted, the jury would have to find that he knew or should have known of the defect in time to remedy it. Assuming that the condition of the scaffold was a temporary defect associated with the structure, Mr. Junkans was entitled to notice thereof. While a separate question of the issue of notice was not

submitted, the issue was properly covered in the court's instructions; this is a procedure which we expressly approved in *Krause v. Veterans of Foreign Wars Post No. 6498* (1960), 9 Wis. (2d) 547, 553, 101 N. W. (2d) 645.

Although the scaffold was constructed by Mr. Cloeter, Henry Junkans had previously used the scaffold and must be charged with notice of its condition. The jury could properly have concluded that the defects which brought about the accident were not ones which arose moments before the accident; rather they were flaws which should have been apparent to Mr. Junkans at the time he personally used the scaffold.

In addition, Mr. Junkans was working on the house at the time of the accident and actually observed Mr. Lee's fall. This would bring the case within the concept of notice expressed in *Rudzinski v. Warner Theatres* (1962), 16 Wis. (2d) 241, 249, 114 N. W. (2d) 466.

We are satisfied that the jury could properly determine that there was constructive notice to Henry Junkans. This court described the concept of constructive notice in the *Uhrman Case, supra,* at page 75, as follows:

"Constructive notice of course is neither notice nor knowledge, but a mere shorthand expression. We say a person has constructive notice of something when for the promotion of sound policy or purpose he is to be treated as if he had actual notice, whether or not he had it in fact."

The appellant Henry Junkans further contends that the trial court erred in changing the jury's answer as to causation. There was testimony on the part of a safety engineer from the Wisconsin industrial commission that safety orders of the commission with respect to scaffolding had not been complied with. Specifically, the commission's orders require that a platform be at least 23 inches wide for the height of a scaffold such as is involved in the case at bar.

There is testimony in the record which establishes that the west end of the platform consisted of a plank not wider than 12 inches. The commission also has an order requiring that a scaffold be inspected, and such inspection was not made in the instant case.

The aforementioned evidence relative to violation of the commission's orders was not rebutted. In *Candell v. Skaar* (1958), 3 Wis. (2d) 544, 549, 89 N. W. (2d) 274, Mr. Justice FAIRCHILD stated:

"Where there is a failure to fulfil a duty under the safe-place statute and an accident occurs which performance of the duty was designed to prevent, the law presumes that the damage was caused by the failure. The presumption may be rebutted, but if not rebutted by evidence, the plaintiff has met his burden of proof."

There is testimony that if the safety orders of the industrial commission had been met the accident suffered by plaintiff Lee would not have occurred. We conclude that the change of the answer on causation was warranted.

### 2. *The Causal Negligence of Vida Junkans.*

Although counsel for Mr. and Mrs. Junkans requested separate inquiries as to their respective negligence, the court declined to grant such request. The jury's finding as to negligence ran against Vida Junkans as well as her husband, and the causation question as amended by the court also included Mrs. Junkans. Vida Junkans was a joint owner of the property, and there is evidence that she went over the plans for the house with her husband and Mr. Cloeter. Mr. Cloeter testified that his oral contract was with both Mr. and Mrs. Junkans. There is also testimony that Mrs. Junkans picked out the type of windows to be installed and changed the plans as to the entryway. However, there is no evidence that as an owner she had control of the

premises, nor is there any evidence that she had notice of the defective scaffolding.

In a second memorandum opinion after verdict, Judge DALEY concluded that Mrs. Junkans "together with her husband, had control of the premises." The trial court did not purport to make a finding that Henry Junkans was the agent of his wife. No question as to agency was submitted to the jury. It is easier to find an agency relationship between spouses than between strangers. *Builder's Lumber Co. v. Stuart* (1959), 6 Wis. (2d) 356, 362, 94 N. W. (2d) 630. However, the mere fact of marriage does not empower the husband to act as agent for his wife. *Lange v. Andrus* (1957), 1 Wis. (2d) 13, 17, 83 N. W. (2d) 140. There has been no proof in the instant case that Henry Junkans was his wife's agent. We find no basis to bind Vida Junkans merely because she was a joint owner and did what an average housewife does when she and her husband decide to build a house.

### 3. *The Effect of the Settlement with Cloeter.*

Mr. Cloeter and the plaintiff entered into an agreement in open court before trial which called for the payment of $4,500 by Mr. Cloeter to the plaintiff in return for a complete discharge, including any obligation by way of contribution. Mr. and Mrs. Junkans did not participate in this agreement, and the plaintiff reserved his right to proceed against them.

There was an additional clause in the agreement under which the plaintiff reserved the right to reject the settlement figure of $4,500. However, at the oral argument his counsel advised this court that the $4,500 has been received by Mr. Lee and that this additional clause is now surplusage.

The agreement is in effect a hold-harmless agreement. Mr. Lee agreed to settle with Mr. Cloeter for the specified sum and to protect him from being obligated to pay any

larger amount—either to the plaintiff or to anyone else. The agreement was a valid one and should be given full acceptance by the court. However, as held in *State Farm Mut. Automobile Ins. Co. v. Continental Casualty Co.* (1953), 264 Wis. 493, 59 N. W. (2d) 425, this type of agreement does not, by itself, shield a settling defendant from a demand for contribution by a joint tort-feasor. However, when the additional fact of actual payment of the settlement figure is added, then to permit contribution would be to encourage needless circuity.

The plaintiff having been actually paid $4,500 by Mr. Cloeter, he must, under his agreement, hold the latter harmless to any further claims. If the plaintiff actually recovers over half of the damages from the other tort-feasor, Mr. Junkans, the latter could look to Mr. Cloeter for contribution; if Mr. Cloeter were to pay the excess to Mr. Junkans, Mr. Cloeter could in turn recover from the plaintiff under their hold-harmless agreement.

It would seem reasonable to short-circuit this involved procedure in those cases where there is an indemnification agreement and the settlement figure has actually been paid in full; this could be accomplished in the instant case by entering judgment for one half of the original judgment in favor of the plaintiff and against the nonsettling tort-feasor only. In effect, such judgment would be limited to the amount that the plaintiff will be able to retain from the nonsettling tort-feasor. In the instant case such amount is one half of the judgment, or $6,137.58.

It should be noted that the settlement agreement in the case at bar does not purport to settle one half of the case. While this is the ultimate result reached, it is not because we are presented with an agreement like the one in *Heimbach v. Hagen* (1957), 1 Wis. (2d) 294, 83 N. W. (2d) 710. On the contrary, the agreement herein is unlike that involved in the *Heimbach Case*. The net result here of a

judgment for one half arises only because of the fact of full payment of the amount of the settlement and the agreement to indemnify, together with our intention to avoid an unrewarding contribution action.

### 4. *The Application of Bielski v. Schulze.*

We are urged by the appellants to grant a new trial under *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 114 N. W. (2d) 105. Obviously, if *Bielski* were to be applied a new trial would be required, since the jury made no comparison of negligence; the jury found Mr. Cloeter 100 percent negligent. That finding would be wholly immaterial if the old rules of contribution between joint tort-feasors are applied. Since both Mr. Junkans and Mr. Cloeter were causally negligent, and the plaintiff was free of negligence, no comparison was needed to enter a proper judgment under the pre-*Bielski* rules of contribution; each tort-feasor would be liable for the whole judgment and would be entitled to contribution if he in fact paid over one-half thereof.

Under the new *Bielski* rules, each tort-feasor would still be liable for the entire judgment, but the amount of contribution would depend on the percentage of negligence attributed to each. In setting forth the rules as to when the new contribution doctrine would apply, this court said (p. 19):

"The new rules shall apply generally whether the cause of action has heretofore arisen or not except that they shall not apply in the following situations: (1) Where a judgment based upon the old rules has been entered and no motion to vacate it has been made or appeal taken before this date; (2) where verdicts have been rendered sufficient to dispose of the case under the former rules but where application of the new rules would require a new trial not required for other reasons; (3) when settlements have been effected with one co-tort-feasor in such manner as would

sufficiently protect him from liability for contribution under the former rules."

In other words, if a case fits any one of the three exceptions in the *Bielski Case,* the *Bielski* rules do not apply. In our opinion, the case at bar fits the second exception: The verdict of the jury is sufficient to dispose of the case under the former rules; if we were to apply the new rules, it would necessitate a new trial which is not required for any other reason. Accordingly, it is our conclusion that the *Bielski* rules are not applicable.

*By the Court.*—Judgment is modified to provide that the action against Vida Junkans and Otto F. Cloeter be dismissed without costs; that judgment in favor of the plaintiff and against Henry Junkans be entered for $6,137.58, without right of contribution. The costs in this court upon the appeal are awarded in favor of the defendant, Henry Junkans, against the plaintiff, Clifton Lee. As so modified the judgment is affirmed.