BERGER and another, Appellants, v. METROPOLITAN SEWERAGE COMMISSION OF THE COUNTY OF MILWAUKEE, Respondent: CITY OF FRANKLIN and others, Defendants.

*No. 157. Argued November 27, 1972.—Decided January 3, 1973.*
(Also reported in 203 N. W. 2d 87.)

[19] *Davis v. State* (1971), 52 Wis. 2d 697, 699, 190 N. W. 2d 890, citing *McCleary v. State, supra.*

742

For the appellants there was a brief by *Kersten &*
*McKinnon,* attorneys, and *George P. Kersten* of counsel,
all of Milwaukee, and oral argument by *George P.*
*Kersten.*

For the respondent there was a brief by *Schroeder,*
*Gedlen, Riester & Moerke,* attorneys, and *Ewald L.*
*Moerke, Jr.,* of counsel, all of Milwaukee, and oral argu-
ment by *Ewald L. Moerke, Jr.*

WILKIE, J. Two issues are raised by this appeal:

1. Is there a question of fact on whether the defendant sewerage commission was the owner of a place of employment within the contemplation of the safe-place statute at the time of the deaths of plaintiffs' decedents?

2. If not, is the sewerage commission liable as an employer even if not an owner of a place of employment?

1. *Liability under safe-place statute as owner of a place of employment.* Appellants' principal argument is that a question of fact is present here as to whether the sewerage commission maintained ownership of the sewer as a place of employment within the contemplation of the safe-place statute. It is their position that the sewerage commission retained substantial control over construction of the sewer and in addition that the sewer site was not in safe condition when it was turned over to the construction contractor. The sewerage commission, in moving for summary judgment, holds the view that there is no question of fact involved in its position that it was not the sewer's "owner" within the contemplation of the safe-place statute and that the sewer site was not in an unsafe condition at the time it was turned over to the contractor.

The safe-place statute requires every employer and every owner of a place of employment or building to maintain it in a safe condition.[2] Responsibility for unsafe premises which cause injury to employees and frequenters does not, however, invariably hinge solely upon legal ownership. This proposition was enunciated in the case of *Potter v. Kenosha*,[3] a factually similar situation involving the creation of a dangerous condition by a construction contractor who was digging a trench in connection with the construction of a sewer.

---

[2] Sec. 101.06, Stats.

[3] (1955), 268 Wis. 361, 371, 372, 68 N. W. 2d 4. *See also: Neitzke v. Kraft-Phenix Dairies, Inc.* (1934), 214 Wis. 441, 447, 253 N. W. 579.

The court excused the city of Kenosha from liability, stating:

"We are constrained to hold that when an owner turns over to an independent contractor the complete control and custody of a safe place, whereon or whereunder the contractor creates a place of employment for the purpose of fulfilling the terms of the contract, the owner reserving no right of supervision or control of the work excepting that of inspection or to change the plan with reference to the construction to be furnished, if thereafter in the performance of the work under the contract the premises are changed by the contractor and as a result a hazardous condition is created, the owner does not become liable to the contractor's employee injured as a consequence of such hazardous condition while acting in the scope of his employment. Were we to hold otherwise we would be placing an interpretation upon the statute not intended by the legislature. Here, the city's purpose in letting the contract was to obtain a satisfactory sewer. . . ." [4]

In view of the *Potter* holding and subsequent cases adhering to this degree-of-control test, the question for this court's determination is whether the independent contractor herein retained "the complete control and custody of a safe place." [5]

Here, it is undisputed that the sewerage commission regularly maintained an office at the construction site staffed by several full-time employees. These employees included one or two resident engineers, a supervising engineer who would be in charge of several projects, and from two to four full-time engineering aides.

The duties of these sewerage commission engineers are as numerous and varied as their governing contract

[4] *Potter v. Kenosha, supra,* at page 372.

[5] *Caldwell v. Piggly Wiggly Madison Co.* (1966), 32 Wis. 2d 447, 450, 451, 145 N. W. 2d 745; *Burmeister v. Damrow* (1956), 273 Wis. 568, 581, 582, 79 N. W. 2d 87; *Lee v. Junkans* (1962), 18 Wis. 2d 56, 61, 117 N. W. 2d 614.

specifications are long and detailed. One of the prime responsibilities of the engineering personnel is to set, in accordance with the contract specifications, the accurate line and grade measurements.[6] The commission's employees also inspect and analyze the concrete, before, during and after it is poured into forms. The setting of these forms is also checked by the commission engineers. Further duties include making daily progress reports which contain weather recordings, progress data and events important to the sewer's construction (flooding, etc.).

Although the sewerage commission retained great inspection authority over all facets of the sewer's actual construction, under the contract the contractor agreed to perform all tests necessary to the completion of the sewer, to furnish all of the needed labor, materials, necessary tools and equipment, and to provide all utility and transportation services necessary to complete the sewer.

Appellants urge this court to hold this great degree of inspection authority amounts to control over the sewer construction within the meaning of the *Potter Case*. They rely on *Frew v. Dupons Construction Co.*,[7] another sewer construction case, for the proposition that detailed, continued inspection can amount to supervision. In *Frew*, however, an inspector for the city ordered the foreman to install a sewer lateral from the main line to a building. Although this lateral was apparently not shown on the plans, it was provided for in the contract as an "extra." In the course of this digging, the gas

---

[6] The terms "line" and "grade" refer, according to respondent, to specifications of the finished sewer shown on the plans. "Line" refers to the direction of the center line of the sewer. "Grade" refers to the elevation of the bottom of the inside of the finished sewer.

[7] (1968), 37 Wis. 2d 676, 155 N. W. 2d 595.

line lateral was damaged and began to leak. Although both the city inspector and the construction foreman were aware of the gas leak, the only precautions taken were the attempted taping of the leak and the back-filling of the hole. Shortly thereafter an explosion and fire damaged the building into which the lateral sewer was being connected. The city was granted summary judgment after suit was filed against it, the construction company and the gas company. The issue presented was whether the city's inspector was acting within the scope of his employment at the time of the negligent act. This court reversed and held the issue should be tried stating:

"Furthermore, it is not entirely clear that the duties of 'inspection' exclude a certain amount of supervision or direction. Part of that duty, it seems, might be not only to inspect, but to see that the job is done right and direct how it is to be done or redone and corrected.

". . .

"A certain amount of instruction and direction is not necessarily unnatural, disconnected or extraordinary so as to say it was outside the scope of Bailey's employment." [8]

*Frew,* therefore, stands for the proposition that inspection and supervision may raise a triable issue regarding the scope of a city inspector's employment. It is yet clear, under the *Potter* rule, however, that inspection alone does not raise a triable issue under this exception to the ownership clause of the safe-place statute.

The manner of inspection in the instant case is like that in *Weber v. Hurley,*[9] a safe-place action against the city of Hurley, Wisconsin, for injuries sustained by the plaintiff while laying sewer tile. The plaintiff, in the course of building a home, hired an independent

[8] *Id.* at pages 684, 685.
[9] (1961), 13 Wis. 2d 560, 109 N. W. 2d 65.

contractor to dig a sewer lateral trench from the main sewer to the home. City employees determined where in the street the sewer main was and also instructed the contractor as to the depth and direction of the trench. These employees also broke through the asphalt surface and, upon the completion of the trench, made the necessary "tap." It was left to plaintiff to lay the pipe from the home to the tap. He did this alone but after the city employees had instructed him on the grade he was required to maintain for proper drainage. The trench collapsed as plaintiff was laying this tile. In response to the contention that the city was in control of the digging operations this court held:

"Under the uncontroverted facts in this case, Johnson was an independent contractor employed by plaintiff. He was in immediate and complete control of the street at the time he was digging the trench and when the accident occurred. None of the restrictions placed by the city upon his operations in any way affected the manner in which the digging was done. Plaintiff made the oral argument that the city may be liable in instructing Johnson to dig around the curb rather than through it. We cannot agree. The place of digging had nothing to do with Johnson's manner of doing the work or the opportunity to shore the walls." [10]

The instant case presents an inspection situation close to the one presented in *Weber*. In *Weber* this court felt there existed a distinction, for purposes of determining who was in control of the construction, between certain restrictions or specifications relating to the end result and the actual manner in which the work was accomplished. In the instant case there were pages of specifications to be followed by the independent contractor. The sewerage commission was present on the jobsite to insure that the sewer was built according to those specifica-

[10] *Id.* at page 569.

tions. The sewerage commission did not exercise control over the actual manner in which the specifications were complied with. To hold, as appellants urge, that the sewerage commission is exercising actual control over the construction of a sewer when it employs engineers to insure compliance with their detailed and complex specifications, is tantamount to holding the mere detailed specifications themselves indicate that degree of control referred to in *Potter*. The presence or absence of engineering inspectors, despite their authority to stop construction progress for lack of compliance with the specifications, is not a manifestation of control. These employees merely enforce the contract.

Appellants also argue that the sewer site was not a "safe place" when it was turned over by the sewerage commission to the construction contractor. Such contention would, if borne out in fact, result in the sewerage commission's liability under the *Potter Case*.[11] Appellants contend that the actual sewer site was not a safe place because that site was selected to run along low, flat land abutting the Root River. This choice of sewer location involved exposure and other dangerous hazards, according to appellants, and, under the rule of *Nechodomu v. Lindstrom*,[12] the owner was bound to see that steps were taken to prevent accidents. Appellants' reliance on *Nechodomu* is misplaced. In *Nechodomu*, a child attractive nuisance case, this court affirmed the trial court's order overruling a demurrer by the owner of the premises upon which the injury occurred. Appellants argued in that appeal that they did not have any control over the machine belonging to the independent contractor who was working outside the building. Citing

[11] "[W]hen an owners turns over to an independent contractor the complete control and custody of a safe place . . . ." *Potter v. Kenosha*, *supra*, footnote 3, at page 372.

[12] (1955), 269 Wis. 455, 69 N. W. 2d 608.

the *Potter Case,* this court held there to be no allegation, sufficient to sustain a demurrer, that control was turned over to the contractor:

". . . It is alleged here that appellants owned and occupied the premises and it cannot be said that they relinquished control over them simply by contracting with Abts for certain work on the outside of the building." [13]

The case is clearly different from the instant situation, since here the facts all point to the relinquishment of control to the contractor.

The entire emphasis in *Potter* with respect to the turning over of safe premises to an independent contractor lies in the contractor's subsequent change of those premises into premises which were unsafe.[14] Here, the sewerage commission turned over a piece of land to the contractor which was not unsafe. The premises, after extensive change by the contractor, became unsafe. Undeniably, these projects involve extra-hazardous conditions. Those conditions cannot, however, be said to have been caused by an unsafe condition existing when the land was turned over to the construction contractor. This contention is without merit.

2. *Liability of the sewerage commission as an employer.* The appellants argue that the sewerage commission is liable as an employer within sec. 101.01 (3) of the safe-place statute. This issue was not properly raised before the trial court. Neither the complaint nor the affidavit filed in answer to the motion for summary judgment mention this issue. The trial court's memorandum decision viewed the case only with reference to the safe-place statute's ownership-of-a-place-of-

[13] *Id.* at page 459.

[14] *See e. g., Burmeister v. Damrow, supra,* footnote 5, at page 582; *Burmek v. Miller Brewing Co.* (1961), 12 Wis. 2d 405, 410, 411, 107 N. W. 2d 583.

employment wording and the *Potter* exception thereto. This court has repeatedly refused to pass on issues raised for the first time on appeal when they were not raised before the trial court and the trial court had no opportunity to pass upon them.[15] There is no compelling reason here to depart from this general practice.

*By the Court.*—Order and judgment affirmed.

---

[15] *McDonald v. Chicago, M., St. P. & P. R. R.* (1968), 38 Wis. 2d 526, 534, 157 N. W. 2d 553.