STATE of Wisconsin, Plaintiff-Appellant,

v.

Herman R. SCHWEGLER, Defendant-Respondent. [Case No. 91–2636–CR.]

STATE of Wisconsin, Plaintiff-Appellant,

v.

Debra L. SCHIER-SCHWEGLER, Defendant-Respondent. [Case No. 91–2637–CR.]

Court of Appeals

*Nos. 91–2636–CR, 91–2637–CR. Oral argument July 2, 1992.—Decided August 5, 1992.*

(Also reported in 490 N.W.2d 292.)

488

489

On behalf of the plaintiff-appellant, there were briefs and oral argument by *Kevin M. Osborne,* assistant district attorney.

On behalf of the defendants-respondents, there was a brief by *Thomas E. Brown, Marna M. Tess-Mattner* and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown* of Milwaukee. There was oral argument by *Marna M. Tess-Mattner.*

Before Nettesheim, P.J., Anderson and Snyder, JJ.

SNYDER, J.   The state appeals from orders[1] suppressing all evidence obtained as a result of a warrantless administrative inspection of the defendants' property by a county humane officer. The state argues that the humane officer acted within her inspection authority, resulting in a search that, although warrantless, was permissible under sec. 968.10(4), Stats., and reasonable under the fourth amendment. We agree with the trial court that the search fell short of fourth amendment reasonableness standards. We affirm.

Debra Schier-Schwegler and her husband, Herman Schwegler (the Schweglers), operate a horse-breeding operation in Waukesha county. The stable is licensed as a commercial stable pursuant to Waukesha County Code sec. 5–48 which permits inspections "at any time" by county humane officers.

On August 8, 1990, Humane Officer Anne Winkel went to the property to conduct a routine inspection, as she had done approximately every three months for the past several years. Officer Winkel determined that no one was present on the property, as sometimes was the case during prior inspections. On at least one prior occasion when the Schweglers were not on the premises, Officer Winkel left a calling card on a bulletin board in the barn to indicate that she had conducted an inspec-

---

[1]The state initially proceeded against the defendants individually. By order dated December 6, 1991, this court consolidated their cases for appeal.

tion. On this occasion, Officer Winkel noticed the sliding barn doors were partially ajar, although a board was lying across the opening. Being a large woman, she had to slide the doors open a few inches more to let herself in.

As soon as she opened the barn doors further and "lean[ed] in," Officer Winkel could smell, in her words, an "overwhelming" manure stench. The barn was hot, with little ventilation. Upon going to the individual stalls, she found the horses standing deep in manure with no food in evidence. Their hooves were substantially overgrown and many of the horses' bone structures were showing. Officer Winkel determined that well over half of the horses needed immediate medical care.

Officer Winkel went back to her vehicle, retrieved a camera, and returned to the barn to document the condition of the animals. She then left. After consulting with a veterinarian and law enforcement personnel, Officer Winkel made arrangements to remove the horses. She was informed that, because of the ordinance, no warrant was necessary to accomplish this. Herman was present when Officer Winkel arrived the next day with the necessary equipment and personnel. Thirty-six horses were removed.

The Schweglers each were charged with being party to a crime of nineteen counts of cruelty to animals, fourteen counts of failing to provide sufficient food to animals, and three counts of failing to provide sanitary shelter to animals, contrary to secs. 939.05, 951.02, 951.13(1) and 951.14(4), Stats. The Schweglers moved to suppress the evidence obtained as a result of Officer Winkel's activities, asserting that her conduct constituted an illegal search and seizure because Officer Winkel had neither a warrant nor the Schweglers' consent to search the premises. Concluding that the Schweglers' held a

reasonable expectation of privacy in the premises, the trial court granted the motion. Having determined that the search was impermissible, the trial court also ruled illegal the seizure of the animals. This appeal ensued.

■

In reviewing an order to suppress evidence, we will sustain the trial court's factual findings unless they are against the great weight and clear preponderance of the evidence. *State v. Murdock*, 155 Wis. 2d 217, 225, 455 N.W.2d 618, 621 (1990). We independently review, however, whether the facts as found satisfy the constitutional standard of reasonableness. *Id.* at 226, 455 N.W.2d at 621.

In Waukesha county, all barns or stables rented out for the purpose of keeping horses are required to be licensed by the county. WAUKESHA COUNTY, WIS., CODE sec. 5-41(a) (1983). A related ordinance sets forth conditions for licensure:

> It shall be a condition of the issuance of a license under this division that the licensed premises *shall be open to inspection at any time* by the sheriff or the county humane agent who is duly vested with police power pursuant to section 58.07, Wisconsin Statutes.

WAUKESHA COUNTY, WIS., CODE sec. 5-48 (1983) (emphasis added).[2] The state argues that the ordinance grants humane officers the authority to conduct warrantless inspections at any time, as long as they are conducted in a reasonable manner. The state also argues that the condition explicitly stated in the ordinance and the Schweglers' annual renewal of the license reflect their implied consent to such inspections.

---

[2]The constitutionality of the ordinance is not challenged.

The primary objective of the fourth amendment is the protection of privacy. *State v. Bauer,* 127 Wis. 2d 401, 405, 379 N.W.2d 895, 897 (Ct. App. 1985). Only those government intrusions that infringe upon a privacy interest violate the fourth amendment. *Id.* We use a two-prong test to determine whether a search or seizure is unreasonable. *Id.* at 405–06, 379 N.W.2d at 897 (citing *Katz v. United States,* 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). First, the complainant must have exhibited an actual expectation of privacy. *Id.* at 406, 379 N.W.2d at 897. Second, the expectation must be one that society is prepared to recognize as reasonable. *Id.*

The fourth amendment reasonableness standard applies to administrative inspections of commercial premises. See *See v. City of Seattle,* 387 U.S. 541, 545–46 (1967). The expectation of privacy in commercial premises is somewhat less than that in a person's home. *New York v. Burger,* 482 U.S. 691, 700 (1987). Nonetheless, an owner or operator of a business has an expectation of privacy in commercial property which society is prepared to consider to be reasonable. *Id.* at 699. This expectation exists with respect to traditional police searches conducted for the gathering of criminal evidence as well as to administrative inspections designed to enforce regulatory statutes, *id.* at 699–700, because a person's privacy interest suffers regardless of the government's motivation. *Marshall v. Barlow's, Inc.,* 436 U.S. 307, at 312–13 (1978).

As with searches of private residences, a warrantless search of commercial premises is presumptively unrea-

sonable. *See,* 387 U.S. at 543.[3] It may be permissible, however, if the search is made with the authority and within the scope of a right of lawful inspection. Section 968.10(4), Stats. The state asserts that a warrantless inspection was permissible here because it was conducted pursuant to this exception, did not entail a forced entry, and occurred during regular business hours.

[3]Discussion was had at oral argument regarding the markedly relaxed expectation of privacy enjoyed by one engaged in a "pervasively regulated" or "closely regulated" business. *See, e.g., United States v. Biswell,* 406 U.S. 311, 316 (1972), and *New York v. Burger,* 482 U.S. 691, 712 (1987), respectively. In such cases, a warrantless search is presumptively reasonable. *State v. Erickson,* 101 Wis. 2d 224, 227–28, 303 N.W.2d 850, 851–52 (Ct. App. 1981).

As here, the inspections in both *Biswell* and *Burger* were conducted pursuant to a statute or ordinance. Those cases, while instructive, nevertheless do not control because the regulatory inspections of "pervasively regulated" or "closely regulated" businesses further an "urgent federal interest," *Biswell,* 406 U.S. at 317, thus outweighing the individual's privacy interest. Although in Wisconsin it is state policy to render aid to vulnerable and helpless animals, *State v. Bauer,* 127 Wis. 2d 401, 409, 379 N.W.2d 895, 899 (Ct. App. 1985), that government interest is not as strong as in the pervasively or closely regulated business cases. *Biswell,* for example, involved a pawn shop owner federally licensed as a gun dealer; the Court upheld the warrantless administrative inspection of the pawn shop because of the owner's reduced expectation of privacy and the government's strong interest in gun control. Similarly in *Burger,* which involved an automobile junkyard dealer engaged in vehicle dismantling, the Court found the inspection constitutionally permissible because the government's strong interest in preventing interstate vehicle theft outweighed the owner's privacy interest.

496

■ These reasons do not salvage the inspection. A "right of lawful inspection" depends upon a determination that the ordinance either permits warrantless inspections to be conducted without the consent of the owners or acts as evidence of their consent. *See* does not permit such a determination.

In *See,* the Supreme Court upheld an owner's refusal to permit a warrantless inspection of his locked commercial warehouse. The attempted inspection was not founded on probable cause to believe that any violations existed; rather, it was part of a program of routine, periodic administrative inspections meant to achieve compliance with the city's fire code.[4] The Court acknowledged that governmental regulation of businesses depends upon effective investigative techniques and that "[o]fficial entry upon commercial property is a technique commonly adopted by administrative agencies at all levels of government to enforce a variety of regulatory laws." *See,* 387 U.S. at 543-44.

Nonetheless, the Court disagreed with the city that the ordinance established a reasonable scheme for the warrantless inspection of commercial premises. *Id.* at 542-43. The Court saw "no justification for so relaxing Fourth Amendment safeguards where the official inspection is intended to aid enforcement of laws prescribing

---

[4]The relevant provision of Seattle's Fire Code, sec. 8.01.050, provided:

> INSPECTION OF BUILDING AND PREMISES. It shall be the duty of the Fire Chief to inspect and he may enter all buildings and premises, except the interiors of dwellings, as often as may be necessary for the purpose of ascertaining and causing to be corrected any conditions liable to cause fire, or any violations of the provisions of this Title, and of any other ordinance concerning fire hazards.

*See v. City of Seattle,* 387 U.S. 541, 541 (1967).

minimum physical standards for commercial premises,"
*id.* at 543, and held that in the absence of consent, warrants are a "necessary and a tolerable limitation on the right to enter upon and inspect commercial premises."
*Id.* at 544. Such a limitation safeguards against the danger that an entry and inspection could be "the product of the unreviewed discretion of the enforcement officer in the field." *Id.* at 545.

Our next question, therefore, must be whether the Schweglers consented to the inspection. The state vigorously contends that the Schweglers did consent. It argues that the Schweglers consented by annually renewing their license under an ordinance which clearly states that, as a condition of licensure, their premises "shall be open to inspection at any time." The state also contends that consent can be inferred from the Schweglers' failure to object to prior inspections conducted in their absence.

The burden is on the state to prove that the Schweglers did, in fact, consent to the search. *See State v. McGovern,* 77 Wis. 2d 203, 211, 252 N.W.2d 365, 369 (1977). Whether the Schweglers consented is a question of fact. *See Kelly v. State,* 75 Wis. 2d 303, 311, 249 N.W.2d 800, 804 (1977). We affirm the trial court's factual findings unless they are clearly erroneous. Section 805.17(2), Stats.

Consent to search is not to be lightly inferred but must be shown by clear and convincing evidence. *Kelly,* 75 Wis. 2d at 316, 249 N.W.2d at 807. The only evidence in the record regarding consent is the language of the ordinance, Officer Winkel's testimony that she once left a calling card advising that she had visited in their absence, and Herman's testimony that he did not con-

sent to the August 8 inspection or the August 9 seizure. The Supreme Court did not infer consent from the language of the Seattle ordinance; nor will we. Based on Herman's testimony, the trial court found that the Schweglers did not consent to the search. That finding is not clearly erroneous.

The state also places great emphasis on the fact that the inspection was conducted during daylight hours and without force. If the search should not have been undertaken in the first instance, the manner in which it was carried out is immaterial.

We now turn to the seizure of the horses on August 9. Although the trial court found that the August 9 entry on the property was "clearly . . . with the view to aid and assist the animals," it also determined that this action, even with the one-day delay, was rendered illegal by the illegal search the previous day. The state contends that even if the August 8 entry was improper, the doctrine of inevitable discovery permits the seizing of the animals on August 9.[5] Under this doctrine, the fruits of an illegal search nonetheless may be admitted if the tainted fruits inevitably would have been discovered by lawful means. *State v. Kennedy,* 134 Wis. 2d 308, 317, 396 N.W.2d 765, 768 (Ct. App. 1986). The state contends that since Herman was present on August 9, he could not have pre-

---

[5]The Schweglers contend that the state has waived this argument by failing to raise it in the trial court. Generally that is true. The reason for the rule is that the trial court should be given an opportunity to address the matter. *See Berger v. Metropolitan Sewerage Comm'n,* 56 Wis. 2d 741, 751-52, 203 N.W.2d 87, 93 (1973). Since this waiver rule is a matter of judicial administration, we may depart from it. *Segall v. Hurwitz,* 114 Wis. 2d 471, 489, 339 N.W.2d 333, 342 (Ct. App. 1983).

vented an inspection on that day, inevitably leading to discovery of the maltreated horses.

██ ██

We are not persuaded. The proponent of the doctrine must show by a preponderance of the evidence that the tainted fruits inevitably would have been discovered by lawful means. To do so, the prosecution must demonstrate: (1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct; (2) that the leads making the discovery inevitable were possessed by the government at the time of the misconduct; and (3) that prior to the unlawful search the government also was actively pursuing some alternate line of investigation. *United States v. Cherry*, 759 F.2d 1196, 1204 (5th Cir. 1985), cert. denied, 479 U.S. 1056 (1987).

Here, Officer Winkel testified that she inspected the Schweglers' property every few months. There is nothing in the record to indicate when a follow-up visit would have been made had she, for whatever reason, not completed the inspection on August 8. She also testified that the visit to the farm on August 8 was for a routine inspection and was not instigated by complaints or suspicions of any wrongdoing. Finally, there was no simultaneous alternate line of investigation underway.

██

On the contrary, no suspicions were raised until Officer Winkel entered the barn. She had to return to her vehicle to retrieve a camera. By her own admission, she photographed the condition of the horses and barn on August 8 to facilitate a criminal prosecution. Accordingly, we conclude that the state has not established by a preponderance of the evidence that, without the illegal entry on August 8, Officer Winkel would have returned

500

at a time which inevitably would have led to a discovery of the violations.

We are not unsympathetic to time and personnel constraints often faced by those in Officer Winkel's position. Nor are we unsympathetic to the plight of animals such as these. We believe, however, that the interests of all can be accommodated, with some compromise, while still respecting the integrity of the fourth amendment.

██

Having found the Schweglers absent, Officer Winkel was not without recourse. She might have sought a warrant under sec. 951.16, Stats.[6] Alternatively, Officer Winkel could have returned another day to inspect or she could have notified the Schweglers of her intent to inspect. The state argues that the success of the ordinance depends upon surprise inspections and that advance notice undermines that goal. We disagree that that necessarily is so. Giving notice that an inspection would be conducted that day or the next, for example, would not destroy the element of surprise. Unsanitary or unhealthful conditions likely could not be cured in a matter of hours or on a day's notice. Surely the deplorable state of the animals in this case could not have been remedied had she telephoned ahead. If the Schweglers then refused to permit an inspection, Officer

---

[6]Section 951.16, Stats., requires that the person requesting the warrant have "reason to believe that a violation of [the crimes against animals] chapter has taken place or is taking place." Although Officer Winkel testified that the inspection initially was not spurred by a suspicion of substandard conditions, she also testified that it was a hot August afternoon, the barn doors were not open enough to permit adequate ventilation, and, immediately upon leaning her head through the door, she could smell a strong stench of manure.

Winkel could have sought a special inspection warrant. *See* sec. 66.122 Stats.

*By the Court.*—Orders affirmed.

NETTESHEIM, P.J. *(dissenting)*. I disagree with the majority's conclusion that Humane Officer Winkel's warrantless search of the Schweglers' barn was unreasonable. I also disagree that *See v. City of Seattle,* 387 U.S. 541 (1967), governs this case.

The fourth amendment protects against unreasonable searches and seizures. As the majority correctly recognizes, the primary objective of the fourth amendment is the protection of privacy. *State v. Bauer,* 127 Wis. 2d 401, 405, 379 N.W.2d 895, 897 (Ct. App. 1985).

Here, the Schweglers are licensed as a commercial stable pursuant to a Waukesha county ordinance. This ordinance permits and requires regular inspections of commercial stables. The Schweglers knew of this requirement and, in fact, their premises had previously been subject to inspections by Officer Winkel, sometimes when the Schweglers were not present. On the day in question, the Schweglers left the barn doors unlocked and open sufficient to allow entry. Under these circumstances, the Schweglers nonetheless contend that Officer Winkel's entry into their unlocked commercial operation was unreasonable.

The majority overreads and overapplies *See.* The facts in *See* are markedly different from those in this case. There, the owner had unequivocally demonstrated and asserted his privacy expectation by locking his commercial warehouse. A greater demonstration of such a privacy expectation can hardly be imagined. In such a case, I too would require a warrant.

*See* recognizes that commercial premises may be reasonably inspected in many more situations than pri-

vate homes. *See,* 387 U.S. at 545–46. *See also Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312–13 (1978). Here the Schweglers, knowing their property was subject to periodic inspections, left the barn unlocked and accessible to any person with a right to be on the premises. Officer Winkel, pursuant to her authority, certainly had such a right. The Schweglers' conduct did not demonstrate a reasonable actual expectation of privacy against Officer Winkel's inspection. *Bauer,* 127 Wis. 2d at 406, 379 N.W.2d at 897.

Nor was Officer Winkel's conduct unreasonable. Her entry was conducted during daylight hours and accomplished by unforced means through an unlocked and open door. Section 968.10(4), Stats., authorizes searches within the authority and scope of the right of lawful inspection. This authority to search stands separate and apart from other authorized searches, including those conducted pursuant to a warrant or consent. By holding that an inspection search can only be conducted pursuant to a warrant or consent, the majority's decision *sub silentio* writes sec. 968.10(4) off the books. I respectfully dissent.